Looney *v.* Hughes.

———————◆◆◆———————

LOONEY, Supervisor of the town of Lancaster, *vs.* HUGHES and BRIGGS.

The duty of a town collector to pay to the several officers named in his warrant the sums required to be paid to them respectively, within one week after the first day of February, is the duty which the collector and his sureties, by their bond, undertake shall be performed; and on the failure of the collector to execute that duty, the condition of the bond is broken, and the liability of the obligors at once attaches.

For the purpose of enforcing that liability as speedily as practicable, the legislature has provided, *for the public benefit,* a summary mode of proceeding against a collector in default, by the issuing of a warrant within twenty days by the county treasurer, against the property of such collector, directed to the sheriff.

But the issuing of such a warrant, and the return thereof unsatisfied, are not conditions precedent to the right of the supervisor of the town to maintain an action against the sureties, upon the official bond of the collector.

Nor will the omission of the county treasurer to issue his warrant within the time specified in the statute, discharge the sureties from their liability upon the bond. GREENE, J. dissented.

The provisions of the statute, relative to the issuing of such warrant, by the county treasurer, being for the public benefit, and not for the benefit of the sureties, are merely *directory,* in respect to the time within which the warrant is to be issued.

MOTION on the part of the plaintiff for judgment upon a verdict taken subject to the opinion of the court. The action was tried at the Erie circuit, before Justice GRAY and a

jury. It appeared on the trial, that in 1855 one Osborn Jewell was collector of the town of Lancaster, Erie county. That on the 30th day of November, 1855, he, together with the defendants as his sureties, executed to the supervisor of said town a bond bearing date the 27th day of November, 1855, in the penal sum of $13,122.20, reciting that said Jewell had been duly chosen such collector, and conditioned that he should well and faithfully execute his duties as such collector, which bond was duly approved by the supervisor, and filed with the clerk of the county. That at the time of receiving and approving said bond, the supervisor delivered to said Jewell the assessment roll of the town of Lancaster with the warrant of the board of supervisors of the county, in due form of law attached thereto, directed to said Jewell as collector of said town, for the collection of the sum of $6561.20, and requiring said collector to pay divers sums to the several town officers therein named, and to the treasurer of Erie county the sum of $4860.40, on or before the first day of February, 1856.

That said Jewell failed to repay the amount required by said warrant, or to make returns for unpaid taxes. That the amount unpaid and unaccounted for by the said Jewell was $2259.91. That on the 10th day of April, 1856, the treasurer of Erie county issued his warrant to the sheriff of said county, commanding him to levy that sum of the goods, chattels, lands and tenements of said Jewell, and to make return thereof within forty days. That said sheriff duly returned the warrant *nulla bona,* and certified that the same remained wholly uncollected, and thereupon the supervisor of said town was duly notified and this action brought. It was shown on the part of the defense, that by subsequent collections and returns of another collector, the deficiency was reduced to the sum of $2118. That the county treasurer issued no other warrant than that above mentioned, and that Jewell had disappeared before the warrant was issued. That he was seen in the city of Buffalo on the 4th day of April, 1856, having

then in his possession money in bank bills and checks to the amount of $1200, and county orders to the amount of $300. That about said 4th day of April he left the public house at which he was stopping in the morning, leaving some papers, amongst which were some county orders, two pocket books, his assessment roll and his overcoat, and has not since been seen or heard-of. That while he was collector, and up to the time of his disappearance, he was a householder in said town of Lancaster.

Upon these proofs, the defendants claimed that the neglect of the county treasurer to issue the warrant within the time prescribed by the statute, exonerated the sureties; and that on the defendants' proof, the legal presumption was that if the warrant had been issued within the prescribed time, the alleged deficiency would have been collected; and that in the absence of all proof to the contrary, it *prima facie* appeared that the loss was occasioned by said neglect of the county treasurer, and the sureties of Jewell were thereby exonerated.

The court directed a verdict for $2118, subject to the opinion of the court at general term, upon a case to be made by the plaintiff.

*Johnson Parsons*, for the plaintiff.

*E. Thayer*, for the defendants.

Davis, J. The bond executed by the collector Jewell and the defendants, is in conformity to the requirements of the statute. (1 *R. S.* 346, § 19.) Its condition is, that *Jewell shall well and faithfully execute his duties as such collector.* These "*duties*" relate solely to the public, and not to the manner of executing his office in those respects in which it relates to or affects the rights or property of individuals. They are defined and declared by statute with great care and exactitude. "Every collector shall within one week after the time mentioned in his warrant for paying the moneys directed to be

paid to the town officers of his town and to the county treasurer, *pay* to such town officers and county treasurer the sums required in such warrant to be paid to them respectively, first retaining the compensation to which he may be legally entitled." (1 *id.* 398, § 6.)

The statute directs, that the warrant "shall require all payments therein specified to be made by such collector on or before the first day of February then next ensuing;" (1 *id.* 396, § 37;) and such was the requirement of the warrant in this case. The duty *to pay* to the several officers named in his warrant the sums required to be paid to them respectively, *within one week* after the first day of February, is therefore *the duty* which the collector and his sureties by their bond undertake shall be performed. So far as relates to taxes, which "the collector shall not be able to collect," the statute provides a mode and the terms, upon compliance with which he may be "credited by the county treasurer with the amount thereof." (1 *id.* 399, § 10.) But failing to secure this credit, the liability of the collector and his sureties upon their bond is at once fixed and certain by his default.

This is the view of the statute and of the liabilities imposed on the collector and his sureties, taken by the court in *Muzzy* v. *Shattuck*, (1 *Denio*, 233.) "I cannot assent," says Mr. Justice Jewett in that case, "to the proposition, that the liability of the collector is limited by the common law rule applicable to the ordinary case of misfeasance or neglect in the discharge of the duties of office by a public officer."

The provisions of the statute seem to me to recognize the collector of taxes in the light of a debtor for the amount of the taxes directed to be collected, and to provide the manner in which that obligation is to be discharged." And again: "The statute imposes a definite liability on the collector and his sureties for the omission to collect and pay, and whether that omission is the result of misfeasance or neglect, unavoidable accident or felony committed by another, I do not think it furnishes any defense to the action." Onerous as this obli-

gation on the part of the collector and his sureties may be, the legislature have thought that the exigencies of the case required it. The statute has rendered the duty thus simple and severe, and the defendants have obligated themselves by their bond that Jewell should *execute that duty.* On his failure to do so the condition of the bond was broken, and the liability of the obligors at once attached.

For the purpose of enforcing that liability as speedily as practicable, the legislature has provided, as I think, *for the public benefit,* a summary mode of proceeding against the collector. By section 13 of the statute above cited, (1 *R. S.* 400, § 13,) it is enacted that where the collector neglects or refuses to pay or account for the taxes as unpaid, as required by the preceding provisions,· "the county treasurer shall, within twenty days after the time when such payments ought to have been made, issue a warrant under his hand and seal, directed to the sheriff of the county, commanding him to levy such sum as shall remain unpaid and unaccounted for by such collector, of the goods, chattels, lands and tenements of such collector, and to pay the same to the county treasurer, and return such warrant within forty days after the date thereof, which warrant the county treasurer shall immediately deliver to the sheriff of the county, but no such warrant shall be issued by the county treasurer for the collection of moneys payable to the town officers without proof, by the oath of such town officers, of the refusal or neglect of the collector to pay the same or account therefor as above provided."

The 14th section prescribes the duties of the sheriff and county treasurer upon the collection of the moneys, or some part thereof, under the warrant. The 15th section prescribes the duty of the sheriff as respects the return to be made to the warrant where the whole, or but part, and where nothing is collected; and enacts also that where none or but part is collected, "the county treasurer shall forthwith give notice to the supervisor of the town or ward of the amount due from such collector." And the 16th section provides, that "the

supervisor shall forwith cause the bond of such collector to be put in suit, and shall be entitled to recover thereon the sum due from such collector with costs of suit, and the moneys recovered shall be applied and paid by the supervisor in the same manner in which it was the duty of the collector to have applied and paid the same."

In the case before us the warrant was issued by the county treasurer, but not till after the expiration of more than twenty days after the time when the payment ought to have been made by the collector. It was returned by the sheriff within forty days from its date, wholly *uncollected.*

The first and principal point on the part of the defendants is, that the issuing of the warrant and its return in strict accordance with the provisions of the statute, were conditions precedent to the right to maintain the action against the sureties on the bond ; or in other words, that the sureties' obligation, in connection with the provisions of the statute, is a guaranty of collection in case a particular course is pursued.

The language of the bond, it is to be remembered, is, that Jewell *"shall well and faithfully execute his duties as such collector."* We have already seen what are the duties of the collector, upon the failure to perform which the breach occurs. Now it is only *upon this breach, and after it has occurred,* that the treasurer can issue any warrant at all. So the argument of the defendants must go the length of establishing the gross anomaly that the obligations of the principal and his sureties on this bond are distinct and different ; that of the former, that he will collect and pay over or account for the taxes within one week after the first day of February ; of the latter, that the sum he fails so to pay or account for shall be collectible of him, provided a warrant is issued against him within twenty days after his default, in the form prescribed by the statute, and is executed or returned by the sheriff within forty days from its date, in the manner also prescribed. It is impossible to interpolate the provisions of the statute in regard to the issuing of the warrant and its return, into the

Looney *v.* Hughes.

bond, as *conditions precedent*, without wholly changing its scope and character.

It is *now*, by its terms, an obligation for the performance of specific duties *by the collector:* it would then be no obligation for the performance of those duties, but that after his failure to perform them, the taxes should be collectible of him by warrant, if issued, executed and returned in the mode named in the statute. In short, that if the county treasurer and sheriff, on the failure of the collector to discharge his duties, performed the duties devolved on them by statute, and failed to collect the moneys in whole or in part, then the collector and his sureties should become liable on their bond. It is clear that such was not the intention of the legislature, but on the contrary, that the taxes should be regarded as a debt owing by the collector, to be paid or accounted for within a a prescribed period, the liability to pay which, both as against him and his sureties, should be absolute if he made default in paying or accounting within that time. It is for *the debt, thus having become absolute, that the warrant may issue;* and the liability of both principal and sureties upon the bond remains unaffected by the warrant, except only so far as it may be reduced by its fruits. In my opinion, the position cannot be maintained that the issuing and return of the warrant are *conditions precedent* to the accruing of the *liability of the obligors on their bond.*

But it is said that they are conditions precedent to the right to maintain any action on the bond; that is to say, that the right of the supervisor to sue the bond is suspended until the warrant has been issued and returned, and that the right to sue is made dependent upon a strict compliance with the requirements of the statute in the issuing and return of the process.

I have grave doubts whether the right of the supervisor to sue is at all restricted or affected by these statutes. The bond is to him in his official character. His right to maintain an action on it upon its breach, independent of any statute ex-

pressly conferring it, would be clear. (*Supervisor of Galway* v. *Stimson*, 4 *Hill*, 136, and cases there cited. 2 *R. S.* 473, § 92.) This right is not necessarily taken away, because another and not inconsistent remedy is given to another officer against one of the obligors. Both remedies might be pursued at the same time. (*Almy* v. *Harris*, 5 *John.* 175. 10 *id.* 388. *Scidmore* v. *Smith*, 13 *id.* 322.) The suit would be affected by the issuing and return of the warrant only so far as that the defendants would be entitled to have whatever sum should be collected on the process applied to their benefit in the action, and to have the action itself dismissed on proper terms, if the whole deficiency were thus collected. Nor does the 16th section of the statute, which commands the supervisor to cause the bond to be forthwith sued after he has been notified by the county treasurer of the amount due from the collector, and declares that he shall be entitled to recover thereon "the amount due from such collector with costs of suit," necessarily affect this question. It simply commands the performance of a duty which existed before. It is not necessary that the supervisor should look to this section for his *authority to sue*, if the object of the legislature was only by express mandate to enjoin the exercise of an existing authority.

But it does not seem to me necessary to determine this question, in order to the correct disposition of this case. It may be conceded that the authority of the supervisor to sue is found only in the 16th section of the statute, and that he cannot bring the action till after a warrant has been issued and returned. The question in the case, then, is, whether the *laches* of the county treasurer in not issuing the warrant within twenty days, discharges the liability of the sureties and takes away the whole right of action. This question is presented in two aspects : 1st. Whether the laches *ipso facto* is a discharge in law. 2d. Whether the defendants, by showing actual injury to them by the laches, are discharged *in toto*, or to the extent of the injury.

Regarding these provisions of the statute as adopted for the

Looney *v.* Hughes.

*public benefit*, and not for the benefit of the sureties, it seems to me they are merely directory in respect to the time within which the warrant is to be used. This is palpably so as regards the collector, and he could never be heard to say that the warrant was void because not issued within twenty days, nor indeed, within the well settled rule of this state, could any party, upon whose person or property the process was to operate directly. (*People* v. *Allen*, 6 *Wend.* 486. *Gale* v. *Mead*, 2 *Denio*, 161. *Thomas* v. *Clapp*, 20 *Barb.* 165. *Pond* v. *Negus*, 3 *Mass. R.* 230 ; 21 *Pick.* 75. *Marchant* v. *Langworthy*, 6 *Hill*, 646 ; 3 *Denio*, 526. *Sedg. on Stat.* 368, *&c. People* v. *Cook*, 14 *Barb.* 259 ; 4 *Seld.* 88.) If these and numerous other cases that might be cited do not fully establish that these statutes are directory, *so far as Jewell is concerned*, certainly no argument or illustration of mine could do so.

I have seen no case in which a statute has been held to be both mandatory and directory in respect to the same subject matter or act to be performed under it ; and as these statutes are directory, so far as the principal against whom the warrant is to be issued is concerned, they are so also in respect to those to be incidentally affected by it. In this view the statutes are to be regarded as mere regulations adopted by the government for the conduct of public officers charged with certain duties, and the laches of those officers in the execution of such duties, cannot exonerate other officers and their sureties from the responsibility incurred by a neglect to perform their duties. (*United States* v. *Kirkpatrick*, 9 *Wheat.* 720 ; *Same* v. *Van Zant*, 11 *id.* 184 ; *Same* v. *Nicholl*, 21 *id.* 505. *Dox* v. *P. M. General*, 1 *Pet.* 325. *People* v. *Russell*, 4 *Wend.* 570. *Seymour* v. *Van Slyck*, 8 *id.* 403.) The case of *The People* v. *Jansen* (7 *John.* 332) is the only one that has fallen under my observation, in which it has been held that mere laches on the part of the government discharged the surety of a public officer. The facts of that case were extraordinary and peculiar, and seem to have forced the application of the principle adopted by the court. But the case, so

far as I can discover, has never since been followed. In *The People* v. *Berner*, (13 *John.* 383,) the case is distinguished from *The People* v. *Jansen*, chiefly on the ground that "there must not only be negligence on the part of the creditor, but an injury resulting therefrom, in order to exonerate the security." In *The People* v. *Russell*, (4 *Wend.* 570,) it is expressly declared that *The People* v. *Jansen* is overruled, so far as it conflicts with the principle "that laches is not imputable to the government, and that statutory directions to public officers are given for its own security and convenience, and to regulate the conduct of its officers, but being directory form no part of the contract with the surety." And in *Seymour* v. *Van Slyck*, (8 *Wend.* 422,) the principle that laches is not imputable to the government, is approvingly repeated. This doctrine is founded, not on any extraordinary prerogative, but upon high considerations of public policy, which are ably set forth and vindicated by Mr. Justice Story in the *United States* v. *Kirkpatrick*, (9 *Wheat.* 735.)

An apt illustration of the intention of the legislature may be drawn from the provisions of the several sections of the statute. The warrant, by the terms of the 13th section, is not to be issued for the moneys payable to the town officers "*without proof by the oath of such town officers of the refusal or neglect of the collector to pay the same or account therefor.*" If the town officers fail to furnish such proof, and the warrant be issued for the amount, payable to the county treasurer only, is the obligation of the bond discharged as to the moneys payable to the former?

But the 16th section declares that the supervisor, in the suit to be brought by him, shall be entitled to recover "*the sum due from such collector,*" and the moneys so recovered shall be applied and paid by the supervisor in the same manner in which it was the duty of the collector to have applied and paid the same. It is obvious that the *sum due,* mentioned in this section, relates to and means the whole amount which the collector was required by his warrant to collect and

Looney *v.* Hughes.

pay to all the officers named therein, less the sum, if any, made upon the warrant, and yet as to part of this amount a warrant may not have been issued. There is no duty imposed upon the town officers to furnish proof by oath of the non-payment to them, except by implication, and where they do not furnish it the warrant can only go for the sum due the treasurer. Suppose that to be all collected on the warrant and paid over by the sheriff, is there no remedy upon the bond for the sums payable to the town? If not, then the neglect of the town officers to perform a duty nowhere expressly commanded, but without which no warrant for these moneys can issue, is a *laches* discharging the sureties *pro tanto* from the obligation of the bond. But the evident intent of the 16th section is, that all the amount due from the collector, and not simply the deficiency upon the warrant, shall be recovered in the action; and this, it seems to me, goes far to indicate that the legislature intended these several provisions to be mere *directory* regulations for the conduct of public officers, for the security and protection of the public, but forming no part of the contract with the collector or his sureties.

It is insisted, however, that the defendants gave evidence showing that they had sustained *an actual injury* by the neglect of the treasurer, and that the legal presumption from the evidence on that subject is, that the whole indebtedness would have been collected upon the warrant if issued in time. It is a legal presumption that legal process will produce its legitimate fruit; but it seems to me the point here raised is necessarily involved in those already discussed. If it be sound law that laches is not imputable to the government in such a case as this, then the consequences of the alleged neglect become an immaterial inquiry. A surety must first show in all cases *an obligation or duty in respect to him to do the act,* for the omission of which he complains, as well as the injury from the omission, before he can legally complain; and here, according to the views we have taken, he fails to show a legal or perfect duty. The plaintiff in this action is the representative of the

public, but, in respect to the proceedings by warrant, the county treasurer was as independent of the supervisor as of the defendants. Either had the same lawful right or power to set him in motion as the other; and the neglect to exercise it is no more imputable to the one than to the other. Nor could the government enforce any more speedily the performance of his duties. They can indict and punish for misfeasance or nonfeasance, but by no possible agency could they anticipate and prevent his neglect. The liability of the defendants rests, therefore, upon those grounds of public policy which they are in common with every citizen interested in maintaining, and which cannot be departed from without the violation of general rights, more important than their individual loss.

The plaintiff must, therefore, have judgment upon the verdict.

GROVER, P. J., and MARVIN, J., concurred.

GREENE, J., dissented.

Judgment for the plaintiff.

[ERIE GENERAL TERM, February 8, 1858. *Grover, Greene, Marvin* and *Davis,* Justices.]