THE PEOPLE, *ex rel.* Knox and others, *vs.* THE VILLAGE OF YONKERS.

Where the trustees of a village, having determined to grade an avenue and build a bridge thereon, over a river, proceeded to establish the district of assessment, procured plans and specifications for the work and advertised for proposals from contractors, and at a meeting of the board, held on the 8th of November, 1860, the proposals were opened, and the contract awarded; they having first amended the specifications, so as to extend the time for the completion of the work; *Held* that such extension of the time did not have the effect to vitiate all the proceedings.

A provision, in a village charter, that the proposals for constructing a public work shall be opened on the day named in the notice, " or upon such other day as the trustees may adjourn to, for that purpose," is directory merely. It is not essential that the time for opening and looking at the proposals shall be continued by regular adjournment from time to time.

The trustees are to open the proposals, and accept that which is most favorable. This they may do at the day mentioned in the notice, or at the adjourned day, or at a day to which they had not adjourned (if the adjourned meeting fail to take place.)

Ordinarily, the combination in one proceeding of improvements so dissimilar in their natures as the grading of a street and erecting a bridge thereon, and the construction of a sewer, would be vicious in principle. But where the sewer is a part of the bridge, having no other purpose to serve than to relieve the same from the effect of the water which collects upon the surface of the street, no valid objection exists.

The power of commissioners, in a street assessment, extends only to known, ascertained and fixed expenses. All others are illegal and void.

Accordingly, where the estimate of the expenses of an improvement, after enumerating specifically various items, amounting in the aggregate to $1216.74, contained a charge of $460.05 for " *contingencies ;*" *Held* that the insertion of this item rendered the assessment illegal and void.

THIS case comes up on return to a certiorari, brought to review the proceedings of the trustees of the village of Yonkers, in respect to grading the extension of Warburton avenue and building a bridge thereon, over the Neperhan or Sawmill river, in said village. At a special meeting of the board of trustees of the village, duly called and held June 28, 1860, at which the president and all the trustees were present, a petition of nine citizens was presented, praying that the proposed work be put under contract and completed. The

petition was referred to the street committee. At the regular meeting September 3, 1860, the street committee reported plans and specifications for the proposed work, with a description of a proposed assessment district, and a resolution to advertise for proposals to do the work. Action upon the report was postponed to an adjourned meeting, September 17, 1860. At the adjourned meeting, Sept. 17, 1860, the report was referred back to the street committee. The regular meeting held October 1, 1860, was adjourned to October 8, 1860, at which last meeting the street committee presented an amended report, as to the assessment district, which was adopted. This meeting adjourned to October 22d, but no meeting was held on that day, for want of a quorum. The trustees, on October 8, 1860, caused a notice of the assessment district, and for proposals to be made, and that they would act thereon on October 29th, 1860, to be published in the village papers. At a special meeting held October 29, 1860, in consequence of remonstrances, notices were ordered for citizens to present petitions and remonstrances, and action was postponed until the next regular meeting, November 5, 1860, which meeting fell through for want of a quorum, and a special meeting was immediately called by the president. At the special meeting, November 8, 1860, various petitions and remonstrances were presented and the five sealed proposals for the work which had been received by the clerk were opened. The specifications were adopted, the work ordered to be done, and Cahill & Morgan's proposals were approved and accepted, and William Radford, Bailey Hobbs and A. W. Doren were appointed commissioners of assessment, at this meeting. The counsel for the board was also directed to prepare a contract for the work, which he did, and it was afterwards executed by the village and by Cahill & Morgan, the contractors, and their sureties. The commissioners of assessment having first been sworn, proceeded to make an assessment upon the property included in the assessment district, and at the regular meeting held February 3, 1862, they pre-

sented their communication, and a majority report signed by Messrs. Bailey and Hobbs, and a minority report signed by Mr. Radford.   The report was referred to a special committee of three trustees, and on February 10, 1862, said committee presented a majority report in favor of confirming the majority report of the commissioners of assessment, and a minority report against confirmation.   The board confirmed the majority report of the commissioners of assessment, and ordered notices to be published for parties assessed to pay their assessments to the treasurer.   Notice was published pursuant to the resolution of the board, and a large portion of the assessments were voluntarily paid before the writ was issued, and the bridge was completed and is in daily use.

The authority of the village to levy and collect assessments is given and regulated, and the mode of proceeding is prescribed by its charter.   (*Laws of* 1857, *ch.* 667, *tit.* 5, §§ 2, 3, *p.* 676, §§ 21 *to* 27 *inclusive, pp.* 684, 685, 686, *as amended by Laws of* 1860, *ch.* 366, *p.* 615.)

The relators objected to the assessment in question as being illegal and void on the general grounds of failure on the part of the trustees and the persons appointed as commissioners to conform to the statute, and on the ground of evident injustice in the assessment itself.

*J. M. Van Cott*, for the relators.

*Edward Wells*, for the defendant.

*By the Court*, Brown, J.   This is a common law certiorari, brought to review the proceedings of the trustees of the village of Yonkers, in respect to the grading the extension of Warburton avenue, and building a bridge thereon over the Neperhan river in said village.   Riverdale avenue runs from the south bounds of the village north to the south bank of the river.   Warburton avenue commences at the north bounds of the village and runs in a southerly direction to the Neper-

han, and across the same to its south bank. This river runs westerly to the Hudson, dividing the village, and the intended effect of the contemplated bridge was to connect the two parts of the village by a line of communication from the southern to the northern bounds thereof. The trustees proceeded to establish the districts of assessment, procured plans and specifications for the work, and advertised in due form for proposals from contractors. They opened the several proposals and awarded the contract. The commissioners of assessment were appointed, who proceeded to make the assessment upon the lands charged with the payment thereof. Various objections were taken upon the argument to the proceedings of the trustees and the commissioners, some of which I will proceed briefly to notice.

At a meeting of the board of trustees, held on the 8th of November, 1860, the proposals were opened and the contract awarded at that time. But before this conclusion was reached the specifications were amended, upon the motion of Mr. Wheeler, so as to extend the time for the completion of the work to the 1st of November, 1861. This is thought by the counsel for the relator to have been an error, because no notice referring to such amended specifications had been or could have been published as required by the charter. We have no means of determining what effect this limitation may have had upon the contract. It may or may not have been beneficial to the contractor and in a corresponding degree prejudicial to the landowner. As the trustees would necessarily have had power to extend the time for the completion of the work after the contract was executed, we do not think such an extension at the time of opening the proposals had the effect to vitiate all the proceedings. The enlargement of the time was not unreasonable in its length, and could not be considered as affecting materially either the interests of the contractors or the landowners. In this respect there was no sensible or material departure from the directions of the act under which the proceedings were had.

Another exception, taken by the counsel for the relator, refers to the time for opening the proposals of the contractors. This was fixed for the 29th October, 1860. It was postponed to the 5th of November by regular adjournment of the board of trustees. This meeting failed to take effect. On the 8th of November the board assembled and the proposals were opened. The direction that the proposals shall be opened on the day named in the notice " or upon such other day as the trustees may adjourn to for that purpose," is directory merely. It cannot be deemed essential that the time of opening and looking at the proposals shall be continued by regular adjournment from time to time like the continuances upon the judgment roll of a court of record. The trustees do not expect to hear an argument upon the policy or propriety of awarding the contract to the author of this or that proposal. They are to open the proposals and accept that which is the most favorable. That is all. This they may do at the day mentioned in the notice, or at the adjourned day, or at a day to which they had not adjourned (if the adjourned meeting fail to take place) and no one be prejudiced. The provision is therefore merely directory, because the trust is as well executed in the one form as in the other.

The next objection of the relators which I propose to consider is that against uniting the improvement for the street and the bridge with that for the sewer. The latter class of urban improvements being made for the purpose of drainage alone, are needed for the benefit of some lands and not for others, while the construction and grading of a street would be beneficial to all, whether they were wet or dry lands. Usually the combination in one proceeding of improvements and assessments therefor so dissimilar in their nature would be vicious in principle. In the present case, however, the sewer is a part of the bridge, having no other purpose to serve but to relieve the south abutment thereof from the effect of the water which collects upon the surface of the street. The work is the improvement of Warburton avenue so as to con-

nect it with Dock and Main street. This includes the bridge over the Neperhan, and the south abutment thereof, in which is the sewer. It is therefore a part of the bridge and not open to the relator's objection.

The aggregate amount of the expenses of the improvement to be distributed and assessed upon the property charged is $12,116.74, made up of eleven different items which are set out in the return to the writ. To seven of these items or specific charges the relators take exception as illegal and unjust. I shall notice but one of them—the charge of $460.05 for contingencies. It is to be remembered that assessments for urban improvements are proceedings which take the property of individual citizens and appropriate it to the public uses. It is a proceeding in derogation of the common law, and the power to be exercised must be strictly pursued. The trustees of the village of Yonkers may take the property of its citizens to make and to grade and improve a street, but the authority given by the charter to effect this object must be followed to the letter, or the proceedings will fail. They cannot take private property for any other purpose. The uses to which the money or the property taken is applied must be legitimate uses, such as the constitution and the law upholds and authorizes, and no other. These uses in the present case are indicated in items of expenses or specific charges to which I have referred. They are the compensation to the contractor, the surveyor or engineer, the printer, the clerk, the treasurer, inspector, and the commissioners and counsel. These are known expenses, payable to the persons named in the estimate. The equivalent therefor is also known, and the citizen whose money is taken sees and knows to whom and for what it is appropriated. But what shall be said of the charge of $460.05, for contingencies? For what purposes, and to whom, is that sum payable? What equivalent benefit will the tax or assessment-payers obtain for that? How came this sum to be exactly $460.05? Why may it not have been ten times more or ten times less? If the commis-

sioners have power to fix it at one sum, in their discretion, they may also fix it at another. And what security will there be for property, in the village of Yonkers, if the commissioners of assessment may fix at their pleasure the sum which the landowners are to pay for a given improvement ? Surely a moment's reflection will suggest that the rights of property do not rest upon so infirm a basis. What is meant by contingencies ? As the charge is found in an estimate of the expenses of improving Warburton avenue, I infer that thereby is intended contingent expenses—expenses which the commissioners could not ascertan—expenses which were unknown, which were uncertain, and which might or might not be incurred thereafter. A contingency is a fortuitous event which comes without design, foresight or expectation. In law a contingent remainder is a remainder depending upon an uncertainty. And so a contingent expense must be deemed to be an expense depending upon some future uncertain event. The power of commissioners in a street assessment extends only to known, ascertained and fixed expenses, and all others are illegal and void. Before the commissioners enter upon their duties, the surveys and examinations are completed and the contracts for the work are made. All the costs and expenses of the improvement can and should be ascertained. If the statute has effect and its directions are executed, no part of the expense is left to depend upon future events. In legislative or municipal bodies, having a treasury and money of their own at their disposal, they may safely make appropriations for contingencies, because if the sums thus appropriated are not used they necessarily return again to the source from which they were taken. But if this sum of $460.05 is not needed for the improvement; if the contingencies referred to in the estimate never happen, there is no process by which it can be returned to the landowners from whom it has been taken. It is not needed for the uses of the street, and therefore its insertion in the estimate of expenses is illegal and void. I have said nothing of the abuses

to which such a system of assessment in a large and growing village must inevitably lead, but have chosen rather to rest my objections to it upon reason and principle.

The proceedings must be reversed, with costs.

[KINGS GENERAL TERM, February 9, 1863. *Emott, Brown* and *Lott,* Justices.]