1871.]    OF THE STATE OF NEW YORK.    11

The People ex rel. Locke v. The Common Council of the City of Rochester.

THE PEOPLE ex rel. JOHN C. LOCKE et al. *v.* THE COMMON
COUNCIL OF THE CITY OF ROCHESTER.

5 L    11
d 37 Mis³365

(GENERAL TERM, FOURTH DEPARTMENT, MAY, 1871.)

The resolution of a corporate or legislative body is not questionable by a
third person because passed upon reconsideration of a negative vote,
moved by one who voted originally with the minority.

The common council of Rochester is required (Laws, 1861, p. 323, §§ 164,
165) to publish a notice specifying any public improvement before
determining upon it.—*Held,* that a notice of an intended public sewer in
that city need not state its proposed depth beneath the surface of the
street, and it seems if not sufficiently low to admit of his drainage, an
owner cannot be assessed for its benefits.

The notice must also require all persons interested to attend at a time
appointed, at which allegations of owners, etc., are to be heard, and a
further order therein made.—*Held,* that a negative vote upon an ordi-
nance directing the improvement, after hearing parties opposed taken at a
meeting pursuant to the notice, might be reconsidered at a subsequent
meeting, and the ordinance passed, without further opportunity for hear-
ing on the part of the opposers.

A meeting of a common council, if it might have been regularly held, will
be presumed to have been so held in the absence of proof to the contrary.

The provisions of the charter of the city of Rochester (Laws, 1861, § 197),
prescribing the length of notice of hearing before the assessors in case
of local improvements, and of the notice by the city treasurer (§ 199) of
receipt of the assessment roll, are directory merely.

THIS was a *certiorari* to the common council of the city
of Rochester to review proceedings taken by it in reference
to constructing a sewer in Savannah street in that city.

It is provided in the charter of the city, in regard to pub-
lic improvements of this character as follows, viz.:

"Section 164. The common council shall not proceed to
open, widen, or improve streets, lanes or alleys, or other
public improvements, the expense of which, in whole or in
part, is to be defrayed by a local assessment, until first
requested by a petition signed by at least a majority of the
owners of property to be assessed for such improvement, or
unless at least three-fourths of all the aldermen shall concur
in voting any improvement to be expedient, or in determin-

ing to make the same after allegations have been heard, in which case no petition or request shall be necessary.

"Section 165. Before the common council shall determine to make any such public improvement they shall cause an estimate thereof to be made, and shall by an entry in their minutes describe the portion or part of the city which they deem proper to be assessed for the expense of such improvement. They shall cause a notice to be published daily in one or more daily newspapers printed in the city of Rochester, for four days, which notice shall specify such improvement, the estimated expense thereof, and the portion or part of the city to be assessed for such expense, and shall require all persons interested in the subject-matter of such improvement to attend the common council at the time appointed in such notice. At the time appointed in such notice the common council shall proceed to hear the allegations of the owners and occupants of houses and lots situated within the portion or parts of the city so described as aforesaid, and after hearing the same shall make such further order in respect to such improvement as they shall deem proper."

The facts of the case are fully stated in the opinion of the court.

*S. A. Raymond*, for the plaintiff.

*J. Shepard*, for the defendant.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. At a meeting of the common council of the city of Rochester on the 5th October, 1869, a resolution was adopted requiring the city surveyor to ascertain and report the expense of constructing a pipe sewer fifteen inches in diameter in Savannah street, in said city. He reported in obedience to said resolution that the expense would be $1,450. Whereupon at the same meeting a resolution was adopted declaring it to be expedient to construct said sewer, describing

the lands benefited by and liable to be assessed for the expense of said sewer, and directing the clerk to publish notice requiring all persons interested in said improvement to attend before the common council on the 19th October, at half-past seven P. M., to the end that they might give to the council their views in reference to such sewer. This resolution was adopted by a unanimous vote of the council.

The clerk, in obedience to said resolution, published the notice as required in one of the official papers of the city from the 14th till the 19th October inclusive.

At the time and place specified in the notice aforesaid, persons interested in the improvement appeared before the council at a meeting then held and opposed the construction of said sewer, and an ordinance directing said sewer to be made was presented to the council and a vote taken thereon, and it was lost, a majority of the members voting against it.

The meeting was adjourned until the next evening. At the meeting on the evening of the 20th October the vote of the previous evening, by which the ordinance was defeated, was reconsidered on the motion of one of the aldermen who voted with the minority on the question of adopting the ordinance.

Further action on the proposed ordinance was then postponed until the next regular meeting, which would be held on the 2d November, and the clerk was directed to give notice that persons interested in said sewer would again be heard at said meeting.

A notice was published by the clerk that persons interested would be heard at a meeting to be held on the 22d of November. This notice was published October 28th, 29th, 30th, 31st, November 1st and 2d.

The 2d November was the day on which the State election was held, and a majority of the members not appearing, no meeting was held; but one was held on the evening of the 3d of November, when, no one opposing, an ordinance, directing the construction of said sewer, and the assessment and collection of the expense thereof, was passed; twenty-three of the

members voting in favor of and two voting against said ordinance.

By section 161 of the charter of the city of Rochester, the common council has power to cause sewers, &c., to be made in said city. The only limitation on this power is contained in section 164, which provides that no such work shall be ordered to be paid for by local assessment, unless requested by petition signed by a majority of the owners to be assessed for such improvement, or unless three-fourths of the aldermen shall concur in voting for such work. In this case there was no petition, but three-fourths of the aldermen voted for the work.

Jurisdiction was acquired by the common council to make the sewer, unless there was some irregularity in the proceedings prior to the passage of the ordinance, by which jurisdiction was lost, or by reason of which the proceedings should be set aside.

The irregularities relied on are :

1st. The reconsideration of the vote by which the ordinance was defeated at the meeting on the 19th October, on the motion of one not voting with the majority.

2d. Misdescription in the ordinance of the proposed improvement.

3d. The omission to afford to those interested an opportunity to be heard on the 2d or 3d of November.

4th. The ordinance was not passed at either a regular or adjourned meeting of the common council, but at one held without complying with the charter or rules of the council.

The meeting on the 19th October was duly adjourned until the evening of the 20th, and any business that could legally be done on the 19th could be done on the 20th.

It was unquestionably competent for the board to reconsider the vote by which the ordinance was lost. Parliamentary law requires that the motion to reconsider be made by one who voted with the majority on the motion proposed to be reconsidered. But whether this shall be insisted on or dispensed with, and the motion made by one voting with the

majority, rests exclusively in the discretion of the body whose action it is proposed to reconsider, and no other tribunal has a right to treat a reconsideration thus moved for as void. A majority could dispense with the rule requiring the reconsideration to be moved by one who voted with the majority, and if the majority treat the motion as regularly made, it is to be considered as a tacit suspension of the rule. The members of the body alone have the right to object to the violation of the parliamentary rule.

2d. The work to be done is sufficiently described in the notice published by the clerk, and in the ordinance. The depth under the surface it is proposed to lay the pipe is no necessary part of the description. If it is not low enough to admit an owner on the street to drain into it, he is not benefited, and no assessment should be made against him for it.

3d. Fair dealing required that notice should have been given of the intention to reconsider and to pass the ordinance for doing the work. The notice for the 22d of November, misled the parties interested, and prevented them from again presenting these objections to the common council against the sewer. But one opportunity had been afforded them; it must be presumed they then presented all the considerations which existed against the justice or propriety of making the sewer. The charter requires but the one notice, and it was purely a matter of discretion whether another hearing should be allowed.

4th. The proceedings returned to us are silent as to the manner in which the meeting held on the 3d of November was called, whether by adjournment by a standing order of the council, or in pursuance of a call by the mayor pursuant to section 33 of the charter.

If there was any mode in which that meeting could be legally called, we must presume that it was adopted, and that the meeting was legally and regularly held.

It was held in the case of the *Bank of the United States* v. *Dandridge* (12 Wheat., 70), that acts done by a corporation, which presuppose the existence of other acts to make

them legally operative, are presumptive proofs of the latter. (*Nelson* v. *Eaton*, 26 N. Y., 414, 415; *Bennett* v. *Clough*, 1 B. & A., 361.)

The provisions of the charter prescribing the length of notice that is to be given by the assessors of the day on which they will hear parties affected by assessments for local improvements, and by the treasurer, of the receipt of the assessment roll by him, and requiring those assessed to pay, are directory merely, and the failure to comply with the statute, does not invalidate the proceedings. (*Hardman* v. *Bowen*, 39 N. Y., 196, and cases cited; *The People* v. *Supervisors of Ulster*, 34 N. Y., 268; *The People* v. *Village of Yonkers*, 39 Barb., 266; *U. S. Trust Co.* v. *U. S. Fire Ins. Co.*, 18 N. Y., 199; *People* v. *Allen*, 6 Wend., 486; *Gale* v. *Mead*, 2 Den., 160.)

It is possible that the proceedings of the common council have been both unjust and oppressive toward the persons assessed for the sewer in question. Yet the proceedings being regular, this court can afford them no relief.

The certiorari must, therefore, be quashed with costs.

Writ quashed.