JOHN LYTH, RESPONDENT, *v.* THE CITY OF BUFFALO, APPELLANT.

*Approval of ordinances and resolutions by the mayor of a city — the power cannot be delegated — when a subsequent approval of a resolution validates a publication of a notice commenced prior to the approval, as against a party not actually prejudiced thereby — when a direction to publish a notice will be deemed directory only — the burden of establishing irregularities and actual prejudice rests upon the party attacking the assessment.*

Upon the trial of this action, brought to have a local assessment for paving Hamburg street, in the city of Buffalo, adjudged null and void, it was shown that a resolution was passed by the common council of the city ordering the street to be paved in accordance with plans and specifications on file in the engineer's office, and, also, another resolution fixing the amount of the expenses to be assessed for the improvement and directing the assessors to make an assessment of that sum upon the real estate benefited by such improvement in proportion to the benefits resulting thereto. Thereafter the assessors made a complete roll and caused a notice to be published in the official paper of the city the length of time required by the charter, to the effect that the roll would remain in their office, open for inspection and revision, for ten days thereafter. At the time the roll was made and the publication of the notice commenced the resolutions had been approved by the mayor's clerk, but not by the mayor himself, although they were thereafter, and during the time the notice was being advertised, presented to and approved by him.

Evidence was given tending to show that the plaintiff had actual notice of the publication of the notice, and that the roll had been made and was on file in the assessor's office; that the roll after its completion, and after the expiration of the time for inspection, was delivered to the clerk of the city, who also caused the notice required by the charter to be published to the effect that it was on file in his office, so that persons interested might file objections to its confirmation, if any existed.

*Held,* that the charter made it the duty of the mayor to examine and pass upon the resolutions and ordinances adopted by the common council, and determine whether or not they should be approved, and that this duty could not be delegated to a clerk or a subordinate in his office.

That, as the resolutions were subsequently approved by the mayor, the roll was, after that time, authorized, and the only irregularity shown to exist was that it was advertised a few days before it had been authorized.

That, as the publication of the notice by the assessors was not jurisdictional, but directory merely, and as the plaintiff was not prejudiced in fact, no ground was presented for annulling the roll.

That it was the duty of the plaintiff to have appeared before the clerk and filed his objection to the confirmation of the roll, as required by the notice published by the clerk, and that by neglecting to do so he had waived the irregularity.

*The People ex rel. Locke* v. *The Common Council of Rochester* (5 Lans., 11–16); *The Petition of Folsom* (2 Thomp. & Cook, 55, 56); *Matter of Mary G. Pinckney* (22 Hun, 474; S. C., affirmed, 84 N. Y., 645) followed.

That, in the absence of proof to the contrary, the regularity of the proceedings would be assumed, and if irregularities appeared they must actually prejudice the plaintiff and the burden was with him to establish that he had been prejudiced.

APPEAL from a judgment entered upon the trial of this action at the Erie Special Term, annulling an assessment imposed upon property belonging to the plaintiff.

*Stilwell & Hill*, for the respondent.

*W. F. Worthington* and *Frank C. Laughlin*, for the appellant.

HAIGHT, J. :

This action was brought to have a local assessment adjudged null and void. The common council of the city of Buffalo first passed a resolution of intention to pave Hamburg street, thirty-two feet wide, with Medina sandstone. The engineer of the city thereupon prepared plans and specifications for the paving of the street of that width and advertized for proposals. Thereafter, and on the 22d day of June, 1885, the common council rescinded its former resolution, and adopted another to the effect that it intended to order Hamburg street paved thirty-six feet wide in accordance with plans and specifications on file in the engineer's office. That officer was directed to advertise for sealed proposals to do the work, and the city clerk was directed to cause the notice of intention to be duly published. Thereupon the engineer returned to his office and changed the plans which he had already made, by inserting thirty-six feet in the place of thirty-two feet, the width which the street was to be paved under the last notice of intention. Thereupon he caused notice to be advertised for sealed proposals to do the work,

in accordance with the charter, and the clerk published the notice of intention also required.

Subsequently, and after the publication of the notice aforesaid, the engineer made his report to the council, with the bids that he had received for doing the work. Thereupon the common council passed a resolution ordering Hamburg street to be paved thirty-six feet wide, with Medina sandstone, in accordance with plans and specifications on file in the engineer's office; and also another resolution that the amount of the expenses to be assessed for the improvement of Hamburg street, is determined to be $16,490, and that the assessors are directed to make an assessment of that sum upon the real estate benefited by such improvement, in proportion to the benefits resulting thereto. These resolutions were approved by the mayor's clerk, and thereafter the assessors made a complete roll and caused a notice to be published in the official paper of the city, the length of time required by the charter, to the effect that in pursuance of the direction of the council, they have made the assessment-roll, and that the same would remain in their office open for inspection and revision for ten days thereafter. That during the time such notice was being advertised by the assessors, the resolutions of the common council before referred to as having been approved by the mayor's clerk, were presented to the mayor and by him approved. The assessment-roll was in the form, and describes the premises as required by the charter, and has annexed to it the certificate of the attorney of the city to the effect that the proceedings were regular, and the certificate of the city clerk that no objections were filed thereto on behalf of any person, and that it remained on file at his office the time required by law, together with the affidavit of the printer of the official paper stating that the notice required by law to be given in the name of the city clerk, that the assessment-roll was upon file in his office and would remain there during the period required by law, so that persons interested might file objections as required by law, was duly published. It further appears, that after the roll had remained the requisite time in the city clerk's office after the publication of such notice, that he reported to the council that no objections had been filed to the assessment-roll, and it was thereupon confirmed.

The first irregularity to which our attention is called occurs in the second resolution of intention to pave Hamburg street. It will be remembered that the first notice was to pave the street but thirty-two feet wide; that this was rescinded and the second notice was to pave it thirty-six feet wide, according to plans and specifications on file in the engineer's office. At the time this resolution was passed, the plans and specifications on file in the engineer's office were for a thirty-two feet street, and the change in the plans to the thirty-six feet street was not made by the engineer until the council had passed this resolution, so that it is claimed the resolution was void for the reason that it referred to the plans and specifications on file when none were on file that called for a thirty-six feet pavement. But we must take the history of a transaction into consideration in determining the meaning and effect of this resolution. It was not the duty nor the usual practice of the engineer to prepare plans and specifications for work upon streets, before the common council had declared its intention to have the work done. After the council had declared its intention to pave or improve the street, it then became the duty of the engineer to prepare the requisite plans and specifications for the work. This, as we have seen, had been done after the council had declared its intention to pave Hamburg street thirty-two feet wide. The plans and specifications so prepared were placed on file in the engineer's office, and were so on file at the time the subsequent resolution was passed rescinding the former and resolving to pave the street thirty-six feet wide instead. The fact that the council in this resolution embraced the words " in accordance with plans and specifications on file in the engineer's office," evidently meant and must be understood as meaning the plans and specifications already prepared, with the exception that it was to be thirty-six feet wide instead of thirty-two, and the plans were changed accordingly by the engineer. If we are correct in this construction as to the meaning of the resolution, the proceedings would be regular and not open to objection.

A more serious question is raised in reference to the publication of the notice by the assessors, to the effect that they had completed the assessment-roll, and that the same remained on file in their office for inspection and correction. This notice, as we have seen, was published after the resolutions ordering the work and fixing the

amount to be assessed were approved by the mayor's clerk and before they were approved by the mayor. We fully concur with the views expressed by the learned judge who tried the case, to the effect that the provisions of the charter make it the duty of the mayor to examine and pass upon the resolutions and ordinances adopted by the council, and determine whether or not they shall be approved, and that this duty cannot be delegated to a clerk or a subordinate in his office. It is his wisdom, judgment and experience that the charter calls for, and this cannot be exercised by others, except in accordance with its provisions. It follows that the roll as made and advertised by the assessors was, at that time, unauthorized. But these resolutions were subsequently approved by the mayor, so that after that time the roll was authorized, and the only irregularity lies in the fact that it was advertised a few days before it had been authorized. This is undoubtedly an irregularity, but is it such an irregularity as requires the annulment of the roll? The notice was published the length of time required by the charter. There is evidence tending to show that the plaintiff had actual notice of the publication of the notice, and that the roll had been made and was on file in the assessor's office; that the roll, after its completion and after the expiration of the time for inspection, was delivered to the clerk, who also caused the notice required by the charter to be published, to the effect that it was on file in his office, so that persons interested might file objections to its confirmation if any existed.

In the case of the *People ex rel. Locke* v. *The Common Council of the City of Rochester* (5 Lans., 11–16), it was held that the provisions of the charter, prescribing the length of notice to be given by the assessors of the day on which they will hear parties affected by the assessment for local improvements are directory merely, and the failure to comply with the statute does not invalidate the proceedings.

In the case of the *Petition of Folsom to Vacate an Assessment* (2 Thomp. & Cook, 55, 56) it was held that although the notice of the assessment was not published in accordance with the law, the requirement of publication was directory, and that inasmuch as the petitioner was not prejudiced in fact, but simply sought upon a bare technicality and without real grievance, to throw the burden which

he ought to bear upon the general taxpayers of the city at large, the assessment would not be annulled.

*In the Matter of Mary G. Pinckney to Vacate an Assessment* (22 Hun, 474; S. C., affirmed, 84 N. Y., 645), it was held that where it appears that the petitioner's agent knew of the work while it was in progress, and the misconstruction, if there was one, of the ordinance was a mistake which could easily have been corrected before the confirmation of the assessment-roll. "Under such circumstances, the objection ought to have been made in time to give opportunity for the correction, and there is neither justice nor equity in allowing the petitioner to lay by for three years and then ask for the first time to raise the objection, by attacking the assessment." Under these authorities it would appear first, that the publication of the notice by the assessors is not jurisdictional but directory merely, and where the plaintiff is not prejudiced in fact no ground is presented for annulling the roll; and, second, that it was the duty of the plaintiff to have appeared before the clerk and filed his objection to the confirmation of the roll as required by the notice published by the clerk in accordance with the charter, and that by neglecting to do so he has waived the irregularity. But again in the absence of proof to the contrary, the regularity of the proceedings will be assumed, and if irregularities appear they must actually prejudice the plaintiff and the burden is with him to establish that he has been prejudiced. (*Morse* v. *The City of Buffalo*, 35 Hun, 613, 614; *In the Matter of the Petition of the Mutual Life Insurance Co. to Vacate an Assessment*, 89 N. Y., 530.) In the latter case FINCH, J., in delivering the opinion of the court, says "the petitioner comes alleging substantial error. To be such he must have suffered an injury and be able to show that in some manner he has been harmed and that a substantial right has been invaded." In the case under consideration no claim is made that the plaintiff has suffered any harm by reason of the irregularity in the publication of the notice by the assessors.

As to the questions raised in reference to the distribution of the assessment for constructing the retaining wall at the crossing of the canal, as well as the questions in reference to the railroad crossing, we agree with the conclusions of the trial court, but for reasons

before stated the judgment must be reversed, and a new trial ordered, costs to abide event.

BARKER, P. J. and BRADLEY, J., concurred; DWIGHT, J., dissented.

Judgment reversed, new trial ordered, costs to abide event.