### In re TAYLOR.

(*Supreme Court, Special Term, New York County.* July 15, 1890.)

1. MUNICIPAL CORPORATIONS—POLICE FORCE—INTOXICATING LIQUORS—OATH.
   Laws N. Y. 1890, c. 163, § 3, which requires each member of the police force to take an oath, within 30 days after the passage of the act, that he is not interested in the manufacture or sale of intoxicating liquors, is merely directory as to time, and not mandatory; and the oath may lawfully be taken within a reasonable time after the expiration of such 30 days.

2. SAME—REMOVAL OF POLICEMAN.
   A member of the police force of New York city, who was granted leave of absence during the 30 days prescribed by the above act, without any knowledge on his part as to its passage, and who did not return to the city until a few days after the expiration of the time limited, should be permitted to take the oath after his return; and his removal because of his failure to take it within the 30 days is improper.

At chambers. Application by John W. Taylor, a discharged policeman, for a writ of *mandamus*.

*Hobbs & Gifford*, for relator. *W. H. Clark*, Corp. Counsel, for police commissioners.

ANDREWS, J. This is a very hard case, and if the court can grant the relator the relief asked for, it should do so. The facts set forth in the affidavit of relator, on which the application is based, are not disputed, and are substantially as follows: The relator has been a member of the police force ever since April 17, 1884, and has regularly done duty as patrolman since his appointment at that time. In May, 1890, the father of the relator's wife, who resided at Bethel, Sullivan county, in this state, while visiting at the relator's house, died on the 11th day of that month. In order to accompany the remains of his father-in-law to Bethel, where interment was to take place, the relator took his vacation earlier than he otherwise would have done, and had a 14-days leave of absence from the department, extending from the 11th to the 25th day of May, and went with such remains to Bethel, where he remained until May 24th, when he returned to New York. There is no telegraphic station at Bethel, the nearest one being 5 miles distant; and there is no railroad station there, the nearest one being 12 miles distant. When the relator left New York, on May 11th, he had no knowledge of the provisions of chapter 163 of the Laws of 1890, nor did he know that any such act had been passed, introduced, or was contemplated. The first knowledge that the relator had that any oath or statement was required of the members of the force, within 30 days from the date of the passage of the act, was on May 24, 1890. The board of police issued an order requiring members of the force to assemble on May 22d, for the purpose of taking the oath required by said act, but the relator had no knowledge of said order until his return to the city. The captain of his precinct, it appears, did, on the 20th or 21st of May, intrust a dispatch to an officer, to be transmitted to the relator at Bethel, concerning

the requirements of the law, but such officer, learning at the Grand Central depot that there was no telegraphic station at Bethel, did not forward the dispatch. The relator is not, and never has been, directly or indirectly interested in the manufacture or sale of spirituous or malt liquors, ales, wines, or beer, and could truthfully take the oath provided for in said chapter 163 of the Laws of 1890, and, having called on the superintendent of the police department on May 26th, was by the latter referred to the chief clerk, to whom he stated that he was able and willing to take such oath. Notwithstanding these facts, the relator was notified on May 28th that he had been discharged from the force, no reason being given therefor, and no charges ever having been preferred against him. The act (chapter 163, Laws 1890,) was passed on the 22d of April, and the third section declares that all members of the police force shall, within 30 days after the passage of the said act, make and subscribe an oath before an officer duly authorized to take the acknowledgment of deeds, to the effect that he is neither directly nor indirectly interested in the manufacture or sale of any spirituous or malt liquors, wine, or beer. While it was undoubtedly the duty of the board of police to require members of the force to comply with the statute, and take the oath therein provided for, within 30 days after the passage of the act, I do not think that under the circumstances of this case the failure of the relator to take the oath within such 30 days justified his discharge from the force. It would, in my opinion, be an unreasonable construction of the statute to hold that a failure to take the prescribed oath within 30 days after the passage of the act operated in every instance to deprive members of the police force of their places.

Many laws have been passed from time to time, the object of which was to render members of the police force secure in their places, and to prevent their discharge except for cause and after a hearing, and at the present time such laws are in full force and effect. Suppose that, at the time of the passage of the act and for 30 days thereafter, members of the police force were sick, and for that reason unable to take the oath; or that, at the time of the passage of the act, and for 30 days thereafter, other members of the force were absent from the state on duty, pursuant to orders from their superior officers. It is inconceivable that the legislature should have intended, in cases like those supposed, where it would have been impossible for members so sick or absent from the state to take the oath in question, that such members should, nevertheless, lose their places upon the force, and be forever disqualified from serving thereon; and yet such result necessarily follows if the relator was lawfully discharged. My opinion is that the provision of section 3, requiring the oath to be taken within 30 days after the passage of the act, must be regarded as directory merely, and not mandatory. This view is confirmed by the language of the last sentence of said section 3, which is: "The failure to take the oath in this section prescribed shall disqualify any one from holding, or debar any one from continuing to hold, any office or position mentioned in this act." It will be observed that this sentence does not declare that a failure to take the oath within 30 days after the passage of the act shall disqualify any one from holding, or debar any one from continuing to hold, any office or position, but, in effect, provides that a failure to take the oath at all shall produce such disqualification or debarment. The books are full of cases in which it has been held that similar provisions in statutes were directory, and not mandatory. "Generally, the rule is when a statute specifies the time within which a public officer is to perform an act regarding the rights and duties of others, it will be considered as directory merely, unless the nature of the act to be performed or the language of the statute shows that the designation of time was intended as a limitation of power." *People* v. *Allen,* 6 Wend. 487; *Jackson* v. *Young,* 5 Cow. 269. "The statute which requires an officer, before whom proceedings are had against an absconding, concealed, or non-resident debtor to make and file his report within twenty days after

the appointment of trustees, and the latter to cause their appointment within thirty days, is directory merely." *Wood* v. *Chapin*, 13 N. Y. 509. "The provision in the statute limiting the time of a referee to make his report is merely directory." *In re Empire City Bank*, 18 N. Y. 200. "The provision of the old Code which required a judge, before whom a case was tried without a jury, to file his decision in writing within twenty days after the trial was simply directory." *Stewart* v. *Slater*, 6 Duer, 84. "Statutes prescribing the time within which an act shall be done, without any negative or prohibitive words, are directory." *State* v. *Harris*, 17 Ohio St. 608, "where a tax was directed to be levied in the year 1866, and it was held that it could be levied in another year." *Looney* v. *Hughes*, 30 Barb. 605; *Tuohy* v. *Chase*, 30 Cal. 524; *People* v. *Lake Co.*, 33 Cal. 487; *People* v. *Rochester*, 5 Lans. 11; *Shaw* v. *Orr*, 30 Iowa, 355; *Corbett* v. *Bradley*, 7 Nev. 106; *State* v. *Horner*, 34 Md. 569. "Statutes as to the time within which laws are to be published may be treated as directory, but still the publication cannot be indefinitely postponed, the fact that wrong and injury may result from delay making some reasonable limit necessary." *State* v. *Lean*, 9 Wis. 279. Upon principle and authority I think that the provision of said section 3, requiring the oath to be taken within 30 days after the passage of the act, must be considered as directory merely, and not mandatory, and that the oath could be lawfully taken within a reasonable time after the expiration of such 30 days; and what should be considered a reasonable time must depend upon the circumstances of each case. In the present case the relator did not know of the requirements of the statute when he went away, nor until his return, and immediately after his return he presented himself at the police department, and offered to take the oath; and I think that he should have been allowed to do so. The application for a *mandamus* will be granted; but, as it is against public officers, who, no doubt, acted in accordance with what they believed to be their duty, it will be without costs.