## McGEHEE ET AL. *vs.* GEWIN.

1. When a sheriff takes a bond from his deputy, conditioned for the faithful discharge of his duties, he is not required to notify the sureties of the deputy's default before bringing suit on the bond ; and therefore, in a suit on their bond, evidence of the deputy's ability to pay at the time of his leaving the State, and afterwards, is not admissible evidence for the sureties.

2. If the sheriff pays to the plaintiff the amount of an execution then in force in his deputy's hands, and the deputy afterwards collects it from the defendant in execution, his sureties are liable on their bond if he fails to account for it, as no one but the defendant in execution can take advantage of the payment by the sheriff.

3. The deputy having "proposed to pay" the money collected by him to his principal, the latter "told him that he would see the persons it was going to, and that he could pay it to them :" *Held*, that this did not amount to a legal tender of the money to the principal, but was a direction to the deputy to pay it to the persons entitled to receive it ; and on his failure to do this, in consequence of which the principal was compelled to pay it, the sureties of the deputy were liable on their bond.

4. The surety cannot discharge himself from liability on his bond by giving notice to the sheriff that he will no longer be bound for the deputy.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. GEO. D. SHORTRIDGE.

THIS was an action of debt on a penal bond, which Gewin, the plaintiff, who was sheriff of Lawrence county, had taken from Silas M. McGehee, his deputy, conditioned for the faithful discharge of his duties as such deputy. The breach assigned is, that said McGehee had collected $336 30 on a *fi. fa.* placed in his hands as deputy sheriff, on the 27th of August, 1841, which *fi. fa.* was issued on a judgment of the County Court of Lawrence in favor of Josephus Walker against Felix A.

M. Sherrod; that he had wholly failed to pay over said money, either to the plaintiff in this suit, or to said Walker; and that the plaintiff had afterwards paid to said Walker the said sum of money, together with the interest which had accrued thereon. A demurrur was interposed to the declaration, but the record does not show what disposition was made of it. The defendants pleaded *nil debet*, with leave to give any special matter in evidence.

On the trial, two bills of exceptions were taken by the defendants. From the first it appears, that "after the plaintiff had closed his testimony, by reading the bond, judgment and *fi. fa.* thereon, mentioned in the declaration, the defendants offered Wiley Galloway as a witness, who testified, that Felton, one of the defendants, called on him to hand a written notice to Gewin that he (Felton) was unwilling to continue a surety of said McGehee on his bond as deputy sheriff, and that he gave up said McGehee in said notice; that this was done at the March term of the Circuit Court of Lawrence, in the year 1841 or 1842; that witness did not remember and could not say whether it was in 1841 or 1842. The defendants then offered the deposition of said McGehee (he not being a party to the action), to show that he and said Gewin had had a settlement of their accounts in the fall of 1844, when said Gewin accepted an order drawn by said McGehee, in favor of Rosenthal, for about $20, to be paid out of certain fees for costs which said McGehee alleged were due him from the Branch Bank at Decatur; that about this time said McGehee was about leaving this State, for the purpose of settling in Missouri, in which State, and in Kentucky, said McGehee had since resided, except on occasional visits to this State. It was not shown that said Gewin ever made known said alleged default of McGehee's to said sureties on his bond, before the bringing of this suit. To the introduction of this testimony there was no objection. Defendants then offered to prove, that said McGehee, at the time he left this State in 1844, was solvent, and in good circumstances, and carried off considerable property with him, but since that time he has become wholly insolvent, and so remains. The plaintiff objected to the introduction of this evidence, and the court sustained the objection;" and thereupon defendants excepted.

The second bill of exceptions sets out the same facts, but with more particularity. It appears that the execution on which the money was collected by McGehee, was issued on a forfeited forthcoming bond, on the 9th of August, 1841, and was returned by McGehee "satisfied in full, *August* 27, 1841"; while the plaintiff paid the amount of the judgment to Walker, the plaintiff in the execution, on the 19*th of August*, 1841. McGehee's deposition is set out in this bill of exceptions. He testifies, that he acted as deputy for Gewin "until about the commencement of the warm weather in the spring of 1841," when Gewin informed him by letter that some of his sureties had given him up, and that he must give a new bond, if he continued to act as deputy; that he attempted to give a new bond, but after twelve months' effort did not succeed; that he never heard of any suits being contemplated against him, until in the winter of 1847-8, after his removal to Kentucky; that after he considered himself dismissed by Gewin, the latter requested him to act as special deputy in cases of emergency; that after he collected the money on said execution, he paid a part of it to Lewis Garrett, on the order of James W. McClung, whom he then thought authorized to receive it; that he offered to pay it to Gewin, who told him to pay it to the persons to whom it was going; that he removed from this State in the fall of 1843, having previously had a settlement with Gewin of all their affairs; that he never had any written authority from Gewin.

The defendants requested the following charges:

1. That, if the jury believed from the evidence that Gewin had paid the amount of Walker's judgment to Walker before the collection of the money by said deputy, such payment by Gewin to Walker was a satisfaction of Walker's judgment, and a satisfaction of the *fi. fa.* issued on said judgment then in said deputy's hands; and that after a satisfaction of Walker's judgment by Gewin, he was not authorized as sheriff, either by himself or deputy, to keep said judgment open for his own benefit, for the purpose of reimbursing himself the amount which he had paid Walker; and if, after such satisfaction of Walker's judgment, Gewin went on, and by his deputy, under color of authority of the *fi. fa.*, collected the amount of the said judgment for his own benefit, and the

deputy afterwards failed to pay the money thus collected to Gewin, the failure was not such an act as would constitute a breach of the condition of the bond, and render the sureties liable in this action.

2. That if Gewin paid Walker's judgment to him, this was a satisfaction of the judgment, and also a satisfaction of the *fi. fa.* in the hands of the deputy ; and if the deputy, after such payment of the judgment, went on, and collected the amount of it from the defendants therein, under color of the *fi. fa.* then in his hands, for Gewin's benefit, and afterwards failed to pay the amount thus collected to Gewin, such failure is not such a breach of the deputy's bond, as would render the sureties liable thereon in this action.

3. That if Walker's judgment was paid to him by Gewin, as shown in Walker's receipt of August 19, 1841, this payment terminated his official connection with the judgment, so far as the collection of it was concerned ; and when his official connection with the judgment was thus terminated, his deputy's official connection with the collection of it was terminated also ; then the sureties of the deputy would not be responsible for the deputy's act, in failing to pay over the money for Gewin's benefit, after such termination of his official connection with the collection of said judgment, whether collected under color of the *fi. fa.* then in his hands, or otherwise.

4. That, if the jury believe from the testimony, that, after the collection of Walker's judgment by the deputy, and the return of the *fi. fa.* under color of which it was collected, the deputy then tendered the money so collected to Gewin, and offered to pay the same over to him, it was Gewin's duty to the sureties of his deputy to have accepted and received the money thus tendered ; and if he failed and declined to do so, and permitted the money to remain in the deputy's hands, without communicating the same to the sureties, and obtaining their assent thereto, and afterwards the deputy failed to pay over the money, thus left in his hands, on demand of Gewin, then the sureties would not be liable on their bond for such failure.

5. That after the payment of the judgment by Gewin to Walker, (if the jury believe this was proven,) then the *fi. fa.* in the deputy's hands expired, as a legal authority to collect

the amount of the judgment from the defendants therein, for the benefit of Gewin, and then the sureties of the deputy would not be liable for the collection thus made under a process that had expired.

The court refused all these charges, and charged the jury as follows : " That if they should find from the facts that said McGehee had never been discharged, dismissed, or released as deputy sheriff of said Gewin, under the bond aforesaid, and had never been surrendered by his sureties, and had proceeded under said executions, as such deputy, to collect the money on said *fi. fa.*, and had collected the same on the 27th August, 1841, as such deputy sheriff, then, and in that event, although the previous payment of August 19, 1841, made by Gewin as sheriff to Walker, would be a satisfaction of said judgment, and a destruction of its vitality, as against the defendants therein ; yet, unless the defendant availed himself of said payment by Gewin, the said judgment, as between the parties to this suit, and with reference to this action, would be so far binding and effectual, as to render the defendants liable to Gewin on said bond, for the money so collected by the deputy, although it was collected by him after the said payment by Gewin to Walker."

The defendants excepted to the charge given, and to the refusal to charge as requested ; and they now assign for error the several rulings of the court, above stated, to which they excepted.

THOS. M. PETERS, with whom was R. O. PICKETT, for the appellants :

1. Gewin's acts were well calculated to induce the sureties of his deputy to believe that no default had been committed, or that he did not intend to hold them responsible for it until after the deputy became insolvent. If this was so, then the question of insolvency was material, and proof of it should not have been excluded. Evidence was offered to show that Felton, one of the sureties, complained to Gewin of the deputy, and demanded his (deputy's) dismissal in 1841, before the default complained of ; and that the deputy was notified of this complaint and required to give a new bond. After this, the default was committed. Gewin made no complaint, con-

tinued the deputy in the discharge of his duties, and long afterwards had a settlement with him of his official accounts ; fell in debt to him, and gave an order to Rosenthal for about twenty dollars, and permitted the deputy to leave the State solvent and full-handed ; and, although he knew of the default, it was concealed by him from the sureties until the deputy had left the State and become insolvent. Had he acted otherwise, and notified the sureties of the default in proper time, they could have had the deputy sued whilst he was solvent and able to pay. But the sheriff's conduct towards the deputy was such as to aid the deputy to get out of the reach of his sureties, and carry off his property, to their injury. This is not allowed ; for it is said to be a general rule founded on " a just and equitable principle," that " if any thing be done between the creditor and principal debtor, which creates injury to the surety, it will go in discharge of his responsibility." Shively v. U. States, 5 Watts 172 ; Peel v. Tatlock, 1 Bos. & P. 422 ; Commonwealth v. Miller, 8 S. & R. 452 ; People v. Jansen, 7 Johns. 332 ; Weaver v. Shryock, 6 S. & R. 262 ; Baker v. Riggs, 8 Pick. 122 ; Taylor v. Bank of Kentucky, 2 J. J. Mar. 564 ; Hoffman v. Hurlburt, 13 Verm. 377 ; Bank of Manchester v. Bartlett, 13 ib. 315 ; Ramsey v. Westmoreland Bank, 2 Penn. 203 ; Wright v. Knepper, 1 ib. 361 ; Row v. Pulver, 1 Cow. 246 ; State v. Reynolds, 3 Miss. 95 ; Strader v. Houghton, 9 Port. 334 ; Wood v. Gray, 5 Ala. 43–47 ; Bank v. Broughton, 15 ib. 127 ; 3 Stew. 160 ; 3 Ala. 409 ; 15 ib. 19 ; 20 ib. 512 ; 18 ib. 97, 645.

2. This is more particularly so as to Felton ; but as the sureties are not only liable to the obligee in the bond, but to one another, if the obligee by his conduct discharged Felton, he discharged all the rest.—Townes v. Riddle, 2 Ala. 694 ; Robert v. Adams, 6 Porter 361 ; Wright v. Stockton, 5 Leigh 153 ; Couch v. Terry, 12 Ala. 225 ; Sherrod v. Rhodes, 5 ib. 683 ; 2 Poth. on Oblig., 50, et seq.; Young v. Clark, 2 Ala. 264.

3. There is error in the fourth exception. If the deputy tendered the money after its collection to his principal, it should have been received by him ; and if after such tender the deputy became insolvent, the loss should not fall on the sureties, because it happened from the sheriff's own act.—

Hampshire Manuf. B'k v. Billings, 17 Pick. 87 ; Wayne v. Kirby, 2 Bailey 551, and cases *supra.*

4. "It is certainly true, that the sheriff has no power to pay the money due on judgment, and keep the execution open for his own benefit"; nor can the sheriff, by himself or deputy, execute process, or collect money on execution, when he is a party, or has an interest. Both these rules of law must be violated, if the sureties of the deputy are held liable, in this action. In such a case as this, the defendant may adopt the payment made by the sheriff, and then he becomes liable in *assumpsit* to the sheriff to repay him the money thus paid.— If this re-payment is made to the sheriff's deputy, and the deputy fails to pay it over to his principal, the transaction is wholly a private affair, and not official, and the sureties are not liable. That the money was collected under pretence of authority of the execution, makes no difference ; it was so collected for the sheriff, and on his private account, after the judgment was extinguished by payment. As against the sureties, the sheriff should be held to a strict and legal performance of his duties, and if he is injured by an illegal and irregular discharge of them, he has no right to complain. To say that he has "no power" to do a thing, is to say that it is illegal and the law forbids it. He cannot, then, confer on himself rights against the sureties by an illegal act.—Boren v. McGhee, 6 Port. 445 ; 7 Ala. 469 ; Fournier v. Curry, 4 *ib.* 321 ; Crutchfield v. Haynes, 14 *ib.* 49 ; Roundtree v. Weaver, 8 *ib.* 314, 316 ; Clay's Digest, 159, § 2 ; Mooney v. Parker, 18 Ala. 708 ; Collins v. Blanten, 2 Wills. 341; 6 Term Rep. 16.

5. The payment of the judgment extinguished it, so far at least as a right to collect money on it is concerned ; and when the judgment is extinguished, the execution issued on it for collection of the money due thereon is extinguished also. The execution, before the payment of the money due on the judgment, is an authority to the sheriff to collect the money; but after the money is paid this authority ceases; and though it may have a certain kind of vitality for some equitable purposes, its vitality is gone as an authority to collect money, for the sheriff or indeed any one else. To give it such vitality, would make it an instrument of extortion,

either in the hands of the plaintiff or sheriff, against weak defendants, who might be so situated as to be unable to give the bond required to suspend it. To say that a defendant so treated has his remedy by action for damages, is poor protection after his property is plundered and lost,—is but to aggravate his injuries if the sheriff or plaintiff happen to be reckless and insolvent men. When the judgment was paid, the sheriff's official connection with it expired, and so did his deputy's; and for acts done after that, the sureties are not liable. This case is unlike Mooney v. Parker (18 Ala. 708). Nelms v. Williams, 18 *ib.* 650 ; Dixon v. Caskey, *ib.* 97 ; Jackson v. Anderson, 4 Wend. 474 ; Foward v. Marsh, 18 Ala. 645; Lewis v. Palmer, 6 Wend, 368; Mooney v. Parker, 18 Ala. 708 ; Jackson v. Caldwell, 1 Cowen 602 ; 1 Cowen 717 ; Cuthbert v. Huggins, 21 Ala. 349; Swan v. Sanddlemire, 8 Wend. 687 ; Andress v. Broughton, 21 Ala. 200 ; Poor v. Deavor, 1 Ired. 391 ; Martin v. Gondy, 1 Hill's S. C. 417 ; Planters' Bank v. Spencer, 3 S. & M. 305.

6. After the payment of the judgment by Gewin, the liability of the defendant to the plaintiff was gone, and the defendant became liable to the sheriff in *assumpsit*, to repay him the amount of the judgment; if his deputy collected the debt thus due him by *assumpsit* of defendant, and failed to pay it over, the sureties are not liable, because they never bound themselves for such acts of the deputy.—Mooney v. Parker, 18 Ala. 708, 712.

L. P. WALKER and SAM'L F. RICE, *contra:*

1. In this State, the common-law rule is, that a deputy sheriff is the agent or bailiff of the sheriff. A bond executed by a deputy sheriff to the sheriff, for the performance of "all the duties which are or may be required of him (the deputy) by law as deputy sheriff," is not for the security of the public, but a mere contract to indemnify the sheriff.—Pond v. Vanderveer, 17 Ala. 426.

2. Such bond extends to all acts of the deputy so long as he continued to be such deputy (Hughes v. Smith *et al.*, 5 Johns. 169); and he continues to be such deputy, until the sheriff goes out of office, or actually removes the deputy.— The U. States v. Vanzandt, 11 Wheat. 189.

3. Although the sheriff may have the power to remove the deputy at his discretion, yet a surety on such bond has no lawful right, either to require his removal, or to put an end to his obligation, by merely giving a written notice to the sheriff that the surety was unwilling to continue a surety for the deputy on said bond, and that he gave up said deputy. Such a right in a surety in such a bond, has no foundation either in the statute or common law ; especially where, as in this case, the notice was given before any breach of duty or of the bond by the deputy.—Crane v. Newell, 2 Pick. 612 ; Andrus v. Bealls, 9 Cowen 693 ; Bernard v. Darling, 11 Wend. 27 ; The U. S. v. Vanzandt, 11 Wheat. 184.

4. If it be admitted, that a surety in a bond for the payment of money or some other article, has the legal right to request the creditor to sue the principal thereon, and that if the principal is at that time solvent and afterwards become insolvent, the failure of the creditor to sue on such bond upon such request, discharges the surety ; yet this concession will not benefit the plaintiffs in error : 1st. Because this rule of law applies only to notes or bonds for the payment of money or other thing, and not to bonds for the performance of certain official acts or duties, nor to any mere bond of indemnity, like the bond here sued on. 2nd. Because this rule of law will not apply even to a note or bond for the payment of money, until it is shown that the surety has done more than the surety did do in this case. In other words, a surety on a note or bond for the payment of money, has no right to give such a notice as was given by the surety in this case, to-wit, a mere notice that he is unwilling to continue to be a surety and that he gives up his principal. Such a notice is not effectual for any purpose, and proves nothing, and cannot authorize the surety to prove that his principal was solvent when such notice was given, and had subsequently become insolvent.—Shehan v. Hampton, 8 Ala. 942.

5. It is certain, that the proof offered, or at least a part of it—that the deputy was at the time he left the State in 1844 solvent, &c., &c., and that he had subsequently become insolvent, &c.—was *prima facie* inadmissible. The plaintiffs in error had not proved any fact, which made the evidence so offered admissible, nor did the plaintiffs in error make the

McGehee et al. v. Gewin.

offer in connection with any fact which made it admissible.—
The plaintiffs in error assumed that the notice they had
proved to the sheriff, made it legitimate for them to adduce
the proof of the solvency and insolvency of the deputy as
offered by them. But they claim for that notice a virtue
which the law does not accord to it. That notice is wholly
nugatory, and they can claim no right from it. There was no
error in rejecting the evidence as offered by the plaintiffs in
error.

6. The refusals to charge as asked by plaintiffs in error
and the charge given by the court below, are free from error.
Fournier v. Curry, 4 Ala. 321 ; Cogburn v. Spence, 14 Ala.
549. The plaintiffs in error, in the charges asked, assume
that they were invested in this suit with all the rights which
the defendant in execution might have had on a motion to
quash the execution. They further assume, that the execu-
tion under which the deputy collected the money on the 27th
August, 1841, was on that day actually void ; and that
although he acted as deputy sheriff under that execution, and
made his return thereon, and received the money thereunder
before its return day, he did all this without any authority,
notwithstanding all the parties to that execution treated it
then as valid, and still treat it as valid. The question pre-
sented by the refusals to charge, cannot be made available to
the plaintiffs in error, at least whilst the execution and the
return thereon are permitted to stand. That return estops
the deputy who made it and also his sureties, because done by
him in discharge of a duty covered by the bond.—Clarke v.
Gary, 11 Ala. 98 ; Holt v. Robinson, 21 ib. 106. In this
case last cited, the return was by a deputy who was held
estopped.—See also Price v. Cloud, 6 Ala. 248.

CHILTON, C. J.—We know of no principle of law, which
enjoined it as a duty upon Gewin, the principal sheriff, to
notify the sureties of his deputy of the default of the latter,
previous to the institution of an action against them. The
creditor must not actively interfere to the prejudice of the
surety of his debtor, but he is not bound to keep the surety
advised of facts, a knowledge of which may be necessary for
his protection. The surety must be on the alert, and protect

himself. The creditor may repose upon the indemnity which their liability to him furnishes for the default of his deputy. He may remain passive, so that he brings his suit within the period required by the statute applicable to such cases. If the securities desire to protect themselves, and provide against liability which they may have incurred, it was their privilege to have the account taken, and to see that McGehee did not leave the country full-handed without paying the amount for which they were bound. It follows, that the condition of McGehee at the time he left this State, and since, had nothing to do with the liability of his sureties, and the evidence relating to it was properly excluded.

2. The charges which the court refused to give appear to be based upon the idea, that the payment by the principal sheriff of the amount of the execution to the plaintiff therein, while such writ is in full force in the hands of the deputy, satisfies such demand, and deprives the deputy of all legal authority to collect the same; and having no authority to collect, his sureties are not bound to pay the money thus collected. This is not a correct view of the effect of such payment. If the plaintiff in execution receives payment from the sheriff, the defendant in the execution may set up such payment, and have satisfaction entered. But this is a privilege which is personal to him; he may waive it, and allow the execution to proceed, and the money to be made; and if he does so, it is not for the deputy who collects the money to say, "I had no authority to do so;" neither can his sureties set this up. If the defendant in the execution interferes so as to prevent the sheriff from proceeding for his indemnity, by reason of the payment which has been made by the latter, and sets it up as a satisfaction, he becomes liable to the sheriff for the amount thus paid, in *assumpsit.*—13 Ala. 357. But if he waives the payment, and permits the execution to proceed, no one else can take advantage of it.—Fournier v. Curry, 4 Ala. 321; Mooney & Black v. Parker, 18 *ib.* 708, where the cases relating to this subject may be found collated.

3. As to the charge, which proceeds upon the idea of a *tender* of the money by the deputy to the principal sheriff, &c: We think the court properly refused it—first, because it was abstract; the proof being, not that the money was tendered,

but merely that the deputy "*proposed* to pay it to Mr. Gewin, who told him that he (the deputy) would see the persons it was going to, and that he could pay it to them." This, in legal contemplation, was no tender, nor was it, as the charge asserts, "permitting the money to remain in the hands of the deputy" after declining to accept the money on a tender; but it amounted to a direction to the deputy to pay the money to the persons entitled. It was a part of the deputy's duty to do this, upon the direction of the principal sheriff—a duty covered by the bond sued on; and if he failed to do this, and retained the fund, in consequence of which the sheriff had to pay it to the parties entitled (for this evidence would seem to imply Gewin had not then paid the money to the parties entitled to it), the latter had the right to recover, and the charge prayed for was improper.

4. The notice given by Felton to Gewin, that he would no longer be bound as security for McGehee, amounted to nothing. The statute makes no provision for a surety's discharging himself in this way, in cases of this character.

5. There is no error available to the plaintiffs in error, in the charge given. It conforms substantially to the views we have above expressed, except that it is too favorable to them in respect of the right of the sureties to discharge themselves by surrendering their principal.

Let the judgment be affirmed.

LIGON, J., having been of counsel before his election to the bench, did not sit in this case.