THE STATE OF FLORIDA, APPELLANT, VS. CHANDLER H. SMITH, ET ALS., APPELLEES.

1. At the date of a bond given by a Collector of Revenue, conditioned for the faithful discharge of his duties, the law provided that if any Collector should, without good and sufficient excuse, neglect to pay over, according to the requirements of law, any money collected by virtue of his office, he should be deemed guilty of embezzlement and punished by imprisonment, &c. Afterwards the Legislature repealed this law. In a suit against the Collector and his sureties upon the bond, the latter pleaded that they were discharged by such repeal, by reason that the bond was executed in view of the penal statute; that its existence was an inducement to their signing the bond, and that the repeal deprived them and the State of a remedy against the Collector to enforce payment of money collected by him. On demurrer to this plea, *held:* that it did not set up a defence in favor of the sureties against a breach of the condition of the bond.

2. The sureties pleaded that after the Collector had begun to neglect his duties, they demanded of the Governor that he suspend the Collector and appoint another to perform the duties under the provisions of an act of the Legislature; but the Governor neglected and refused so to do, and the default of the Collector alleged in this suit occurred subsequent to this request, whereby the obligors claim that they are not liable. On demurrer to this plea, *held:* that this plea did not set up a defence to the action; that the laches or neglect of the officer of the Government in such case did not relieve the sureties.

Appeal from the Circuit Court for Leon county.

This is a suit upon the bond of W. R. Pettes, late Collector of Revenue for the county of Leon, against the principal and sureties. The bond was dated May 13, 1872, conditioned for the faithful performance " of all the duties of said office as prescribed by law." The plaintiff avers that the collector, from the date of the bond up to February 24, 1874, did receive and collect for taxes due the State the sum of $80,133.42, of which he had neglected and refused to pay over to the proper officers of the State the sum of $5,210.92.

The defendant, Chandler H. Smith, and other sureties,

plead first, that they are the sureties of Pettes; that at the date of the bond the duties of the collector of revenue were stipulated and set forth by the laws of the State then existing, and that no other or different duties devolved upon him than those so prescribed; that on the 21st of February, 1873, the Legislature passed an act entitled " an act relating to the indebtedness of the State," without the knowledge or consent of defendants, and that by the provisions thereof the duties of the collector were greatly enlarged and varied, and laws in force, when the bond was executed, which prescribed the duties of the collector, were repealed and annulled; and that by divers acts of the Legislature, in force at the time of the execution of the bond, the duties of the collector were varied and changed without the knowledge or consent of the defendants; that by force of the several laws passed subsequently to the date of the bond, the plaintiff, without the knowledge or consent of the defendants, altered the terms, duties and conditions of the bond, and changed and enlarged the duties and responsibilities of the collector, as prescribed at the date of the bond, by providing, in the said act approved February 21, 1873, for the collection by the collector of a large additional tax in Leon county, upon the property therein, to-wit: a tax of three mills on the dollar upon the assessed value of said property to pay interest and principal of one million dollars of Florida State bonds, to be issued under said act, and imposing on said collector various additional liabilities and responsibilities.

For a *second* plea the defendants say, that at the date of said bond certain penalties were imposed and denounced against collectors in case of their default; that the existence of these penal laws was an inducement to the said defendants to sign the bond, and afforded to the plaintiff a means by which to compel the performance of duty by collectors, and was a protection to the sureties; that by an act ap-

proved February 14, 1873, and also by, an act approved February 17, 1874, the said penal statutes were repealed, and plaintiff thereby abandoned and relinquished all means by which to compel the collector to discharge the duties prescribed by law, the existence of which penal laws was an essential condition of the obligation whereby, by force of the said acts of 1873 and 1874, the defendants were released and discharged as sureties.

For a *third* plea the defendants say, that at a time when the collector had failed to perform some of the duties of his office, to-wit: June 23, 1873, the said sureties demanded of the Comptroller and of the Governor of the State that the said collector be required to discharge his duties or that he be suspended or removed, as provided by law in such cases, and that some other person be designated to collect the taxes; that the Governor neglected and refused to comply with such request; that all the moneys which had come to the hands of the collector prior to such request have been paid over to the State, whereby the sureties say they were discharged of their liability.

The plaintiff demurred to the first, second and third pleas.

To the first, because it does not show what duties were prescribed by law at the date of the bond; nor what other or different duties were imposed on the collector; nor that said act of 14th February, 1873, offers any legal defence to this action; nor does the alleged imposition of additional and further duties on the collector in any manner discharge the said collector from the performance of his duties as prescribed; nor does such allegation constitute any defence to the action.

Plaintiff demurs to the *second* plea that the repeal of the statute, relating to penalties as alleged, furnishes no legal or sufficient defence; and to the *third* plea that it is insufficient, &c. Plaintiff also filed replication to each of the pleas.

12

The court, upon argument, sustained the demurrer to the first plea and overruled the plea, and overruled the demurrer to the second and third pleas, and sustained the pleas. The defendants excepted to the ruling of the court in sustaining the demurrer to the first plea and overruling the plea; and the plaintiff excepted to the judgment overruling the demurrers to the second and third pleas and sustaining the pleas.

The court also struck out the plaintiff's replications to the second and third pleas, to which plaintiff excepted, and judgment was rendered in favor of the defendants, the sureties, that they go hence, &c., and that the plaintiff take nothing by this action against them. Judgment was rendered against the defendant, Pettes, for the penalty of the bond, to be discharged, &c. The plaintiff appeals.

*Bolling Baker* for the State.

To the declaration defendants below, Smith, Meginniss, and Hodgkiss, filed four pleas, to three of which plaintiff below demurred, and to each of which there was also an replication.

Plaintiff's demurrer to defendants' first plea was sustained. The demurrers to the second and third pleas overruled by the court, and said second and third pleas sustained, and thereupon judgment was rendered for said defendants on the said second and third pleas.

To the various rulings of the court below upon all but the first plea, the plaintiff below excepted, and the said rulings and judgment thereon are now assigned for error in this court.

The principal, if not the only, question now presented in this court is, whether, supposing the matters had been well pleaded by appellees, the defences set up in the second and third pleas in the court below released them from their

liability on the bond sued on below. And the object of all the pleading of plaintiff in the court below was to arrive at an issue, upon the trial of which their liability could be tested.

To the first plea there was a demurrer, which was sustained by the court, thus disposing of the defence attempted to be set up under that plea.

To the second plea of defendants there was a demurrer which the court overruled and sustained the plea.

It was error in the court to overrule the said demurrer, because an inspection of the plea will show that it tendered no issue of fact in which plaintiff could safely join. That it was uncertain and double, and was bad in substance.

A plea is bad if double, and a pleading will be double which contains several answers, whatever be the class or quality of the answers. Stephen on Pleading, 258, and text books generally.

The first paragraph of said plea, or the clauses of said plea which contain an allegation, allege that when defendants signed the bond there existed by law certain penalties against defaulting collectors of revenue, but neither the law nor penalties are specified, so that there was nothing in those averments which plaintiff could traverse, confess, or deny, because of the generality and uncertainty of the allegations.

The second distinct allegation in said plea is that the *existence* of the *laws aforesaid* was the inducement to defendants below for signing said bond, but there were no laws specified to which the word *aforesaid* could apply. Nor was the fact of the *inducement* for signing the bond a material issue in an action on the bond, unless it was shown or alleged. 2 Paige, 497.

Each succeeding allegation of said second plea presents a different answer of a different and distinct class and quality, and the whole concludes with an allegation not of a dis-

tinct fact, but of a *legal conclusion*, assumed to result from facts defectively pleaded, or so obscurely pleaded, and with such uncertainty that no issue could be safely joined on the whole together or either fact separately.

The demurrer, therefore, was the only method of meeting the plea; and the proper judgment upon the demurrer would have been that the defendants plead over, and they should have amended the plea so that each ground of defence would have been set out distinctly, separately, and with certainty, so that plaintiff could not be forced to join in an immaterial or uncertain issue.

The demurrer to the third plea should have been sustained, for the same reasons that are stated in reference to the demurrer to the second plea, but more especially for the reason that the defence set up in said plea (if well pleaded) was, that by the failure of the Comptroller and Lieutenant-Governor of the State to comply with certain requests of defendants, they were discharged from liability on said bond, for such averments, even if true and well pleaded, furnish no defence to the action, as has been repeatedly decided. Davis vs. Huggins, 3 N. H., 231; The People vs. Russel, 4 Wend., 570; 8 N. H., 539.

In 4 Wendell, 570, the court held that the omission of the Comptroller for eight years to sue a defaulting collector was no defence to an action on the bond against the sureties.

The Supreme Court of the United States has decided that the omission of the proper officer to recall a delinquent paymaster did not discharge the sureties on his bond. United States vs. Vanzandt, 11 Wheat., 184; Dox vs. P. M. General, 1 Pet., 328, 324.

All the cases where a different doctrine was held were cases between *individuals*, and the decisions do not apply to actions on official bonds, upon the ground that the government cannot be guilty of laches, as laid down in United

States vs. Kirkpatrick, 9 Wheat., .720; Smith vs. United States, 5 Pet., 292.

And even in cases between individuals the rule is, that such is not a good defence, unless it is also *alleged* and *proven* that when the request was made the principal was solvent, and subsequently became insolvent. Mahwren vs. Parsons, 8 N. H., 539; Hoffman vs. Hubbard, 13 Wendell, 377; Davis vs. Huggins, 3 N. H., 231.

The replications to defendants' second and third pleas were good, and should not have been stricken out, because they did *traverse* each and every allegation in defendants' said pleas, and if such traverse produced an issue of law, (as was held by the court below,) then it was the fault of defendants' said pleas which tendered a conclusion of law arising out of badly pleaded facts, instead of tendering a proper issue upon the facts themselves. But the replications were true in point of fact, and did tender an issue of fact. The replications *denied* that the penalties contained in the act of 1869 did alter or discharge the condition of the bond, for the said penalties *were not* repealed until February 7, 1874, while the default complained of occurred in 1873. But the allegation of the second plea further is, that certain other acts, to wit: the acts of February 14, 1873, and the act of February 17, 1874, Chap. 1977, repealed the penalties contained in the acts which were in force when the bond was signed. Now the replication *denies this allegation*, and so raises an issue of fact to be determined by reference to the acts themselves.

But examine the acts. The act of 24th June, 1869, pamphlet acts, pages 1 to 23, and the act of 14th February, 1872, pamphlet, page 36, Chap. 1887, and the act of February 12, 1872, were the acts in force when the bond was given. The first contains penalties; the two last do not.

The first (the act of 1869) containing the penalties, was not repealed until 17th February, 1874, *after* the *default*

had occurred.   In the act of 1869 the duties prescribed by the warrant to the collector, section 35, are precisely the du‑ ties prescribed by the act of 1872, section 4 of said act.

The act of February 14, 1873, Chap. 1935, passed after the bond was given, *does not* repeal the acts of 1869 and 1872, but provides that the payments by the collector shall be monthly instead of on first Monday in January, and pre‑ scribes a penalty of two years in State prison for failure to make payments or monthly returns.

The act of 21st February, 1873, provided for an additional tax of 4 mills on the dollar, (and this act which is supposed to enlarge the duties of the collector) and provided a penalty of imprisonment in the State prison of not less than two nor more than five years for failing to comply with the provis‑ ions of that act, but *did not* repeal the penalties in the act of 1869.   None of the foregoing acts *alter* the duties to be performed by the collector, but only vary the manner and time of performance, except that the act of 21st February, 1873, provides for the collection of an additional 4 mills on the dollar.

The act of February 17, 1874, Chap. 1976, sec. 36, pre‑ scribes the duties to be performed by the Collector in ex‑ actly the same language as that used in section 35 of the act of 1869, and only the manner, and time, and mode of col‑ lecting are varied, (but not the duty of collecting or paying over is varied) ; but in no one of the acts above recited is it made *illegal* or *prohibited* to the collector to pay over to the State the amounts collected by him, as is alleged in defend‑ ants' plea.

The act above cited, February 17, 1874, repealed the act of June 24, 1869, which was in force when the bond was given, but the action in this case was not the non-perform‑ ance of duties prescribed by the act of 1874, as the failures to pay over money were of the sums collected in 1872 and

1873, during the whole of which time the acts of 1869 and 1872 were in force.

The issue of fact tendered in the replications to pleas 2 and 3, would have developed the above facts; and the court erred in striking out the replications and preventing thereby such issue of fact from being tried. The court erred in not permitting the issue tendered in the replication to the fourth plea to be tried by the jury, and in ruling that the decision upon the second and third pleas made that unnecessary.

The appellant insists that there is nothing disclosed in the pleadings which should bar a recovery against defendants. And it is nowhere alleged in said pleadings that the appellant seeks to recover, or make the defendants liable for any sum beyond the penalty of their bond. Nor is it alleged or shown that any act of the Legislature imposed any liability upon defendants below which was not within the amount of the penalty of the bond. If it is contended that the importance of the additional tax of four mills in 1873 was such an alteration of the obligation of the collector as to release the sureties, then the slightest variation in the assessment annually made would invalidate the bond of every collector of revenue in the State, and no tax could be assessed to meet any emergency without the *consent* of the sureties to every bond in the State.

The case of the United States vs. Kirkpatrick, 9 Wheaton, 720, does not go to the extent of saying that every new assessment of taxes under acts passed subsequently to the making of the bond, releases the sureties by enlarging the duties of the principal.

In that case the collector had been commissioned and given bond under acts providing for a *direct tax*. The *commission* had expired, and a *new appointment* was made of the same collector, but he *gave no further bond*. In the meantime an act had been passed providing for the collec-

tion of an internal revenue tax, and in the suit on the col lector's bond it was sought to charge the sureties with the amount of internal revenue tax collected under the *last* commission. The court say that the bond was given with express reference to the *first* commission ; that the condition referred to direct taxes, and the court held that under the facts in that case, the sureties were not liable for the amount collected under the *new commission.* 9 Wheaton, 720.

In the case of the Exeter Bank vs. Rogers et al., 7 N. H., 21, the foregoing case from 9 Whea. was referred to and the reasons given for the decision as stated above.

In the case of the Exeter Bank vs. Rogers et al., (7. N. H., 21,) the facts were these : The Exeter Bank was incorporated in 1803 for twenty years ; Rogers gave bond with security (as cashier) for the faithful performance of the duties of his office, and for the payment over of all money, etc. In 1822 an additional act of the Legislature was passed continuing the charter of the bank, and imposing other and different duties on the officers, including the cashier Rogers, and providing a penalty of $10,000 for non-performance. Rogers continued cashier until 1830 from 1809, and only gave one bond, that of 1809, being the same sued on in the above case. The court says : " The language of the condition of the bond in these cases is to have its full effect when there is nothing to restrain it (citing 12 East, 399.)" The court further says : " The recital of the condition of the bond is that Rogers had been appointed cashier, and shall faithfully discharge the duties of his office, and account for all money and other property in his keeping. The plain letter of the condition of the bond is that he shall faithfully discharge the duties of the office so long as he should hold it under the appointment. Any delinquency of Rogers while he continued in office under that appointment is within the broad terms of the condition, and it is incumbent upon defendants to show some strong ground

that the delinquencies which exist are not within the true intent and meaning of that condition. But it was contended that the additional act of the Legislature made such changes in the corporation that the sureties ought not to be answerable for the conduct of Rogers after that act took effect, but this furnishes no ground for discharging the surety in this case. We see nothing in these changed provisions that materially varies the condition of the surety, or that affords the slightest pretext for holding him discharged. If the principal had incurred all the penalties which the additional act prescribes, it would have had no more effect upon the bond than if he had incurred forfeitures to the same extent under any other law. The sureties could not have been affected by it."

Judgment was rendered against the surety. Exeter Bank vs. Rogers et al., 7 N. H., 21.

The principal ground of defence set up in the case of Pettes is precisely the same as the ground relied on in the above case, and all the authorities show that it is not a good defence.

*T. W. Brevard, Jr.*, for Appellees.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court.

The plaintiff assigns for error the ruling of the court overruling the demurrers to the second and third pleas, and in striking off the replications thereto.

The second plea sets up the fact that the State, plaintiff in the action, repealed the penalties prescribed against defaulting collectors; that the existence of these penalties was an inducement to the signing of the bond by the sureties; that these penal statutes afforded a protection to them and a means by which the plaintiff could compel a performance of duty on the part of the collector; that by such repeal

these means of compelling performance was relinquished; that these penal statutes were an essential condition of the obligation, and that by the repeal these sureties were discharged.

By the act of 1869, (Chap. 1,713, § 52,) it was provided that "if any collector of revenue shall, without good and sufficient excuse, neglect to pay over, according to the requirements of law, any money collected by him by virtue of his office, he shall not be entitled to the fees thereon, and shall moreover be deemed guilty of embezzlement of the money so collected," and punished by imprisonment in the State penitentiary not exceeding ten years, or by a fine.

If the collector was liable to be punished under that statute, does its repeal affect the sureties?

The penalty given by the statute in force at the time the bond was executed is not contemplated by any language used in the bond itself. That statute gives no cumulative remedy against the officer for the collection of the money remaining in his hands. It provides no means of compelling the payment of money. It is a statute against embezzlement, and its enforcement against the guilty officer is at the option of the government and not within the control of his sureties. If the statute had not been repealed, the sureties could not have demanded its enforcement before suit and judgment on the bond against all the obligors. It was held in New York, when the Legislature had provided a summary procedure against a collector by warrant, in case of his default, that the issuing of such warrant within the specified time, and its return unsatisfied, need not precede an action against the sureties on his bond. Looney vs. Hughes, 30 Barb., 605.

If this statute had not been repealed, the sureties could not plead to an action on the bond that the crime (if a crime had been committed) had not been prosecuted; that would not constitute a defence to such an action. The State is not

estopped from collecting upon the bond because it does not enforce the penalties, nor is it within the power of the sureties to compel the State to prosecute.

While it is true that there may be a moral force in the existence of the penal statute, which operates more or less upon the fears of public officers to prevent the commission of crime, it cannot be claimed that the quality of property exists in this moral power, or that the failure to prosecute deprives any party of the means of enforcing the payment of money. The legal purpose and object of the punishment is not to collect the debt but to punish the wrong-doer, and to protect the public against his evil example. The State, in repealing this penal statute, simply says it will not prosecute a certain offence by means of the criminal code. The defendants had no defence in the fact that the State did not prosecute while the law was in force, and we hear no reason for saying that the State is estopped by declaring it will not prosecute. Cooley's Con. Lim., Chap. 9, 286–7, and authorities there cited.

The power to punish an alleged crime is lodged in the State, and there is no right vested in any individual to control that power; it can be exercised or not only at the option of the State. The adoption of the doctrine suggested by this plea might be attended with serious consequences.

It would be hazardous to legislate in regard to crimes by changing the existing penalties, lest some contract between individuals or between private persons and the State might be affected.

The contract, however, was entered into with reference to the sovereign power of the State. Every statute relating to the police is subject to modification or repeal, at the will of the Legislature. Every contract is made with reference to the statutory provisions directly affecting the rights of parties, but with reference to the power of the Legislature to change the law so far as such change does not affect those

rights. Can it be possible that a mere penal statute, con-- ferring no private right, and giving no private remedy—a statute referring entirely to the sovereign power, has any effect upon a contract like this one? If the act of the Legis- lature had impaired the contract, or taken away a remedy which had been available, so that the condition of the sure-- ties was changed, and means of redress were gone or seriously impaired, they might insist that the State had lost its right to charge them.

The legislation referred to has in no way affected the rights or the remedies of the parties, and, therefore, the con- clusion is that the plea does not set up any allegations of law or fact which constitute a defence to the action.

As to the third plea. This plea alleges that at a time when the collector had failed to perform his duties, and a condition of the bond had been or was being broken, these defendants requested the Governor to suspend the collector and designate some other person to perform his duties as provided by law; that the Governor neglected and refused to comply with their request. In other words, they allege that the plaintiff through its officers was guilty of laches, whereby the defendants (sureties) were damaged or their hazard increased, &c.

It has long been well settled by judicial decisions that laches cannot be imputed to government. Governments transact business through agents only, and cannot, like pri- vate persons, be subjected to the observance of such sharp and close rules of conduct as may be exacted of individuals in their commercial dealings with each other. If it were not so, by the connivance of sureties, for instance, with the agents of government, it might be made impossible to en- force the bonds of its financial officers. We can add nothing to the arguments and reasoning presented by the Supreme Court in U. S. vs. Kirkpatrick, 9 Wheat., 720; U. S. vs. Vanzandt, 11 ib., 184; Dox and others vs. The P. M. Gen'l,

1 Peters, 318; Smith vs. U. S., 5 Peters, 292, and other authorities cited by the counsel for the appellant.

. It is further suggested that the act of February 14, 1873, is the law under which the Governor is supposed to be invested with the power to suspend a collector of revenue for neglect of duty. This act was passed since the giving of the bond in suit, and could not have been contemplated by the sureties when they executed the bond. It is optional with the Governor by the terms of that act to exercise that power; but if he had violated a plain duty in the matter it would not discharge the sureties, according to the doctrine of the cases referred to.

It is our opinion that the matters set up in the third plea by the defendants are not available as a defence, and that the judgment of the Circuit Court in overruling the demurrers to the second and third pleas must be set aside.

As to the exception taken by the defendants to the ruling of the court sustaining the demurrer to the first plea, the defendants not having appealed, there is no question presented thereon by the assignment of errors.

The judgment of the Circuit Court is reversed, and the cause is remanded for such proceedings as may be had in conformity to law and practice of the court.