## UNITED STATES v. CAMPBELL et al.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1909.)

No. 2,740.

1. UNITED STATES (§ 51*)—BOND OF OFFICER—LIABILITY OF SURETIES—DEFENSE OF LACHES.

The right of the United States to recover on the bond of an officer for a defalcation cannot be affected by the laches of its other officers or agents in permitting such officer to remain in office after knowledge of prior defalcations.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 51.*]

2. UNITED STATES (§ 51*)—BOND OF OFFICER—DISCHARGE OF SURETIES.

Sureties on the official bond of a federal officer cannot withdraw from such bond without the consent of the United States, and notice to the appropriate department that they will be no longer bound is ineffective to relieve them from liability for subsequent defalcations of their principal.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 51.*]

In Error to the District Court of the United States for the District of Colorado.

Ralph Hartzell, Asst. U. S. Atty. (Thomas Ward, Jr., U. S. Atty., on the brief), for the United States.

Charles J. Hughes, Jr. (Gerald Hughes and Barnwell S. Stuart, on the brief), for defendants in error.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. This was an action against the sureties on the official bond of a receiver of public moneys at a local land office of the United States. The sureties denied liability upon the ground that they gave seasonable notice of the misconduct in office of their principal and of existing defalcations and that they would no longer be held responsible upon the bond, but that the government failed to require a new bond with other security and failed to remove him, and so gave him an opportunity to commit the additional defalcations for which the action was brought. The trial court, having found the facts, held as conclusion of law that the sureties were released from liability and entered judgment accordingly. The government prosecuted this writ of error.

In United States v. Kirkpatrick, 9 Wheat. 720, 6 L. Ed. 199, the sureties upon the bond of a collector of revenue urged that they were exonerated by the laches of the officers of the government in failing to require the collector to make settlements at short and stated periods as required by law. It was held that the requirements of the law constituted no part of the contract of the sureties, but, on the contrary, were by way of additional protection to the government and for the regulation of the conduct of its own officers. Upon the subject of laches the court said:

"Then, as to the point of laches, we are of opinion that the charge of the court below, which supposes that laches will discharge the bond, cannot be

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

maintained as law. The general principle is that laches is not imputable to the government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only through its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions. It would, in effect, work a repeal of all its securities."

In United States v. Vanzandt, 11 Wheat. 184, 6 L. Ed. 448, it was held that the intrusting of additional funds to a paymaster in the army after knowledge of prior and existing defaults and neglects did not release the surety upon his bond from liability for the additional funds, and that this was so though the act of Congress provided that in case of such defaults the paymaster "shall be recalled and another appointed in his place." An attempt was made to distinguish the case from that of Kirkpatrick upon the ground that the latter was purely a case of laches, whereas in the former there was an unauthorized intrusting of funds to a public defaulter whom the government was bound by law to have dismissed from office; but the court said:

"The neglect in the one case and in the other imputes laches to the officer whose duty it was to perform the acts which the law required; but in a legal point of view the rights of the government cannot be affected by these laches. The provisions in both laws are merely directory to the officers, and intended for the security and protection of government, by insuring punctuality and responsibility; but they form no part of the contract with the surety."

In Dox v. Postmaster General, 1 Pet. 318, 7 L. Ed. 160, which involved the liability of sureties upon the bond of a postmaster. Chief Justice Marshall said of the Kirkpatrick and Vanzandt Cases:

"These two cases seem to fix the principle that the laches of the officers of the government, however gross, do not of themselves discharge the sureties in an official bond from the obligation it creates as firmly as the decisions of this court can fix it."

Jones v. United States, 18 Wall. 662, 21 L. Ed. 867, also involved the official bond of a postmaster. The defense was that the Auditor of the Treasury of the Post Office Department, with full notice of a prior defalcation and embezzlement of funds, neglectfully permitted the postmaster to remain in office, whereby he was enabled to commit the default in question. The defense was briefly disposed of by reference to the prior cases.

The doctrine of these cases was again affirmed in Hart v. United States, 95 U. S. 316, 24 L. Ed. 479. The court, after observing that the government is not responsible for the laches or the wrongful acts of its officers, said:

"Every surety upon an official bond to the government is presumed to enter into his contract with a full knowledge of this principle of law, and to consent to be dealt with accordingly. The government enters into no contract with him that its officers shall perform their duties. A government may be a loser by the negligence of its officers, but it never becomes bound to others for the consequences of such neglect, unless it be by express agreement to that effect."

The case at bar is not distinguishable from those reviewed save in a single point. Here the sureties gave notice to the officers of the

government of existing defalcations, and they requested that action be taken, and declared they would no longer be held responsible upon the bond. It is not important that knowledge of the situation was conveyed by such a notice, instead of being acquired in the first instance through official supervision and inspection. Nor, as we have seen from the above cases, is it a sufficient defense that action was not immediately taken to make it impossible for the faithless official to continue in his misconduct. So all that remains is the assertion of the sureties that they would be no longer obligated. The bond executed by them was conditioned for the faithful performance by their principal of the duties of his position "at all times during his holding and remaining in said office." We are not aware of any rule that would authorize the sureties to terminate their obligation by notice. Doubtless they would have been permitted to retire upon the furnishing of another bond with sufficient sureties; but as long as their contract subsisted according to its terms they remained liable thereon. The consent of the government was essential to their release. Were it otherwise, its operations might be greatly impeded and embarrassed by notices from sureties upon both sufficient and insufficient grounds. If the rule contended for should be sustained, the risk of failure to investigate the actions of public officers, to investigate them promptly, and promptly to discharge the officers from the service, would fall upon the government, and there would likely be much confusion and uncertainty in its securities.

The settled rule seems to be that, in the absence of a statute authorizing it, sureties cannot withdraw from a bond executed by them, except with the consent of the obligee. Barnard v. Darling, 11 Wend. (N. Y.) 29; Andrus v. Beals, 9 Cow. (N. Y.) 693; Crane v. Newell, 2 Pick. (Mass.) 612, 13 Am. Dec. 461. In the last case, Parker, Chief Justice, said that, while it would seem proper that a surety should have an opportunity, where the officer misbehaves himself, of getting released from liability for subsequent misconduct, yet it was for the Legislature to make provision for it in case they should deem it expedient. To the same effect is McGehee v. Gewin, 25 Ala. 176.

In State of Florida v. Smith, 16 Fla. 175, the sureties on the bond of a collector of revenue notified the Governor of the official misconduct of their principal and demanded that he be suspended and another be appointed to perform his duties. The Governor refused to remove the collector, and the default for which action was brought occurred subsequently. It was held this was not a sufficient defense to the action.

There is nothing in Williams v. Lyman, 88 Fed. 237, 31 C. C. A. 511, decided by this court, inconsistent with the foregoing conclusions. Although the bond sued on in that case related to the performance of public duties, it was between individuals, and did not run to the government. Bonds running to the government to secure the performance of public duties are controlled by considerations which do not apply to conventions between private individuals.

The judgment of the District Court is reversed, and the cause is remanded, with direction to enter judgment in favor of the government upon the facts found.